No. 25-1849

# IN THE UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

**233RD STREET PARTNERSHIP, L.P.,**
*Plaintiff-Appellant*

v.

**UNITED STATES,**
*Defendant-Appellee.*

Appeal from the United States Court of Federal Claims
No. 1:23-cv-01358
(Senior Judge Loren A. Smith)

# BRIEF OF PLAINTIFF/APPELLANT

MICHAEL J. SMITH
STEVEN M. WALD
STEWART, WALD & SMITH, LLC
3636 S. Geyer Rd., Suite 200
St. Louis, MO 63127
Telephone: (314) 720-0220
smith@swslegal.com
wald@swslegal.com
**ATTORNEYS FOR PLAINTIFF/APPELLANT**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

**Case Number** 25-1849

**Short Case Caption** 233rd Street Partnership, L.P. v. US

**Filing Party/Entity** **233rd Street Partnership, L.P.**

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 08/07/2025

Signature: **/s/ Michael J. Smith**

Name: **Michael J. Smith**

| **1. Represented Entities.**<br>Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.**<br>Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.**<br>Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.<br><br>☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.<br><br>☑ None/Not Applicable |
| 233rd Street Partnership, L.P. | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |
| | | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☐ Yes (file separate notice; see below) ☑ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases**. Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☑ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |
| | | |

## TABLE OF CONTENTS

CERTIFICATE OF INTEREST ........................................................................ ii

TABLE OF CONTENTS ..........................................................................................v

TABLE OF AUTHORITIES ...................................................................................vii

STATEMENT OF RELATED CASES .....................................................................1

INTRODUCTION .....................................................................................................1

STATEMENT OF JURISDICTION...........................................................................3

STATEMENT OF THE ISSUE..................................................................................4

STATEMENT OF THE CASE...................................................................................4

SUMMARY OF THE ARGUMENT .........................................................................7

ARGUMENT ............................................................................................................10

I. THE STANDARD OF REVIEW IS *DE NOVO*…………………………… 10

II. THE CFC INCORRECTLY HELD THAT THE RAILROAD OWNED FEE SIMPLE TITLE IN THE RAILROAD LINE ADJACENT TO APPELLANT'S PROPERTY……………………………………………...11

A. In New York, When Land Is Taken For Public Use the Fee to the Land Appropriated For the Public Use Will Remain In the Owner………………………………………………...……11

B. The CFC Should Have Followed *Silver Beach* and Ruled that the Subsequent Deed to the Railroad Was the Completion of the Acquisition and the Landowner's Acquiescence to the Condemnation………………………………………………...16

C. Following *Silver Beach* Makes Sense In Light of the Circumstances Surrounding the Second Transaction………..……………….…25

D. *Silver Beach* is Also Consistent With New York Deed Construction Rules That Require the Court Consider Whether Multiple Writings Form part of the Same Argument………………………..………..33

E. The CFC Should Have Upheld New York Law and Interpreted the Second Instrument Strongly and Strictly In Favor of the Landowner…………………………………………………...37

III. CONCLUSION......................................................................................... 42

## TABLE OF AUTHORITIES

*Anand v. Wilson*, 32 A.D.3d 808 (N.Y. App. Div. 2006)…………………………21

*Barber v. City of New Rochelle*, 99 N.Y.S.2d 393 (N.Y. Sup. Ct. 1950)…………25

*Beach Land Amusement Co., Inc. v. Staten Island Rapid Transit Ry. Co.*, 153 N.Y.S.2d 692 (N.Y. Sup. Ct. 1956)…………………………………………… 9,38

*Bradley v. Crane*, 94 N.E. 359 (N.Y. 1911)…………………………………passim

*Camp Bearberry, LLC v. Khanna*, 234 A.D.3d 1158 (N.Y. App. Div. 2025)……25

*Casitas Municipal Water Dist. v. United States,* 708 F.3d 1340 (Fed. Cir. 2013)..10

*Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 F.2d 49 (2d Cir.1993)..34

*Craig v. Rochester City & Brighton R.R. Co.*, 39 N.Y. 404 (N.Y. 1868)……..40-41

*Crouch v. State*, 218 A.D. 356 (N.Y. App. Div. 1926)………………………passim

*Curtis Props. Corp. v. Greif Companies*, 212 A.D.2d 259 (N.Y. App. Div. 1995).21

*E. C. Brown Co. v. Ontario County*, 123 N.Y.S.2d 546 (N.Y. Sup. Ct. 1953)….15,40

*Ellamae Phillips v. United States,* 564 F.3d 1367 (Fed. Cir. 2009) .........................1

*Estate of Hermann v. C.I.R.*, 85 F.3d 1032 (2d Cir. 1996)…………………………31

*Erie Lackawanna Ry. Co. v. State*, 38 A.D.2d 463 (N.Y. App. Div. 1972)..29,30,41

*Friedman v. Ender*, 116 N.Y.S. 461 (N.Y. Sup. Ct. 1909)………………………20

*Gosstol Realty Corp. v. Gillman*, 224 A.D. 63 (N.Y. App. Div. 1928)…………34

*Great N. R. Co. v. United States*, 315 U.S. 262 (1942)……………………..…32

*Hayner v. State*, 82 N.Y.S.2d 211 (N.Y. Ct. Cl. 1948)……………………15,28

*Heard v. City of Brooklyn,* 60 N.Y. 242 (N.Y. 1875)……………………..……15,38,41

*Hudson & M.R. Co. v. Wendel*, 85 N.E. 1020 (N.Y. 1908)…………………30,37,41

*In re Harlem River Drive, City of N.Y.,* 121 N.E.2d 414 (N.Y. 1954)……….8,14,37

*In re Ludlow Ave. & Whitlock Ave. in City of New York*, 164 A.D. 839 (N.Y. App. Div. 1914)……………………………………………………………………………30

*Lipton v. Bruce*, 136 N.E.2d 900 (N.Y. App. Div. 1956)………………………27,36

*Keller-Wala v. Coello*, 224 A.D.3d 892 (N.Y. App. Div. 2024)………………..…21

*Kinley Corp. v. Ancira*, 859 F. Supp. 652 (W.D.N.Y. 1994)………………………21

*Mahon v. New York Central Railroad Company*, 24 N.Y. 658 (N.Y. 1860)……..41

*Matter of Eckart's Est.*, 348 N.E.2d 905 (N.Y. 1976)……………………………..33

*Miner v. New York Cent. & H.R.R. Co.*, 25 N.E. 339 (N.Y. 1890)………………..30

*Mott v. Eno*, 74 N.E. 229 (N.Y. 1905)……………………………………………..41

*New Mexico v. United States Trust Co.*, 172 U.S. 171 (1898)……………………32

*Nau v. Vulcan Rail & Constr. Co.,* 36 N.E.2d 106 (N.Y. 1941)…………10,34,35,36

*O&W Lines v. St. John,* 228 N.E.2d 370 (N.Y. 1967)…………………8,14,16,27,29

*Porter v. Int'l Bridge Co*., 93 N.E. 716 (N.Y. 1910)………………………………*39*

*Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1 (1990) ("*Preseault I*").......1

*Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*") ..1,2,3,5

*Ray v. Grube*, 131 A.D. 294 (N.Y. App. Div. 1909)………………………………14

*Roby v. New York Cent. & H.R.R. Co.*, 36 N.E. 1053 (N.Y. 1894)…………………30

*Schenectady Chemicals, Inc. v. DeLuke Sand & Gravel Co.,* 286 N.Y.S.2d 902 (N.Y. App. Div. 1968)……………………………………………………………..15

*Silver Beach Realty Corp. v. Geenlan*, 204 N.Y.S. 701 (N.Y. Sup. Ct. 1924), *aff'd sub nom.* 210 A.D. 829 (N.Y. App. Div. 1924)………………………………passim

*Toews v. United States,* 376 F.3d 1371 (Fed. Cir. 2004).........................................1

*TVT Records v. Island Def Jam Music Group*, 412 F.3d 82 (2d Cir. 2005)…34,35,36

*Vandermulen v. Vandermulen*, 15 N.E. 383 (N.Y. 1888)………………………27,29

**Statutes and Court Rules**

16 U.S.C. § 1247(d) …………………………………………………………...1,5

28 U.S.C. § 1295(a)(3)……………………………………………………………...3

N.Y. Law ch. 140 (1850)…………………...………………………………passim

RCFC 58…………………………………………………………………………6

**Other Authorities**

43 A N.Y. Jur. 2d Deeds § 227………………………………………………….34

*Black's Law Dictionary* (12th ed.2024)……………………………………………26

*Calamari & Perillo, Contracts § 70*………………………………………………21

*Code of Federal Regulations*…………………………………………………………19

NEW YORK JURISPRUDENCE (2d ed. 2024)………………………………34,36

*Randolph on Eminent Domain* § 206……………………………………………41

*Wood on Railroads § 245*……………………………………………………………30

## STATEMENT OF RELATED CASES

Counsel is unaware of other related cases within the meaning of Circuit Rule 47.5 that will directly affect or be directly affected by the Court's decision in this appeal.

## INTRODUCTION

Appellant filed its Complaint on August 18, 2023. Appellant alleged that the United States is liable under the Fifth Amendment for a taking of Appellant's property rights when Appellant's land, located in Bronx County, New York, was authorized for use as a public use easement through the operation of the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act").[1]

Whether a landowner is entitled to compensation under the Tucker Act in a Rails-to-Trails case depends on meeting two prongs of a three-prong test—a taking occurs if the railroad only held an easement (prong one), and if one of the other two prongs are met, as set out by this Court in *Preseault II:*

1) Who owned the strips of land involved, specifically did the Railroad… acquire only easements, or did it obtain fee simple estates;

[1] It is well-established that the Tucker Act constitutes the United States' implied promise to pay just compensation for valid claims founded on the United States Constitution when private land is converted to a public easement for a hiking and biking trail under the Trails Act. See *Preseault v. Interstate Commerce Comm'n,* 494 U.S. 1, 2 (1990) ("*Preseault I*"); *Preseault v. United States,* 100 F.3d 1525 (Fed. Cir. 1996) ("*Preseault II*"); *Toews v. United States,* 376 F.3d 1371 (Fed. Cir. 2004); *Ellamae Phillips v. United States,* 564 F.3d 1367 (Fed. Cir. 2009).

2) If the Railroad acquired only easements, if the terms of the easement were limited to use for railroad purposes, then the authorization for future use as public recreational trails constituted a taking [*i.e.*, exceeds scope of the easement]; or

3) Even if the grants of the railroad's easements were broad enough to encompass recreational trails, if the easements terminated prior to the alleged taking so that the property owners at that time held fee simples unencumbered by the easements then a taking occurred [*i.e.*, abandonment of the easement].

See *Preseault II,* 100 F.3d at 1533.

The issue in this appeal only applies to prong 1 of *Preseault II*. Appellant moved for summary judgment pursuant to prongs 1 and 2, the Appellee cross-moved for summary judgment pursuant to prong 1, and the CFC agreed with Appellee that the railroad owned the fee simple rights in the area of the railroad corridor adjacent to Appellant's property. Appellant argued the evidence showed that the area of the railroad corridor was originally acquired via New York condemnation proceedings. However, Appellee argued that a subsequent transaction between the railroad and the same landowner from the same condemnation proceedings resulted in the railroad obtaining the fee simple rights. Appellant argued in reply that under New York law, the subsequent transaction was the landowner's acquiescence to the taking, and that notwithstanding the second transaction, New York law would still consider the railroad's ownership to be limited to an easement for railroad purposes.

Appellant's argument cited a New York case directly on point – where a New York condemning authority condemned an easement and the parties subsequently

executed a fee simple transfer of the same land. The New York court interpreted the subsequent transfer as merely the landowner's acquiescence to the taking and so ruled that only an easement was transferred. The result in that case was consistent with New York's strict policy concerning the extent of the interest acquired by condemning authorities. New York law mandates that when the public use for which an easement is acquired ends, the owner of the reversionary interest takes back full control over the formerly burdened land.

The CFC did not engage in any analysis concerning Appellant's contention that the two writings should be construed as one. As a result, the CFC did not conform with New York law concerning the construction of deeds. The CFC erred by considering nothing other than the subsequent deed. The CFC should have ruled that Appellant's predecessor-in-interest granted an easement to the railroad company, and then should have proceeded to an analysis of *Preseault II* prong 2 – whether recreational trail use is outside the scope of a railroad purposes easement.

## STATEMENT OF JURISDICTION

The CFC had jurisdiction under the Tucker Act, 28 U.S.C. § 1491(a)(1), and entered Judgment pursuant to Rule 58 of the Rules of the Court of Federal Claims ("RCFC") on May 7, 2025. Appx1. The Appellant filed its Notice of Appeal on June 6, 2025. Appx531-532. This Court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## STATEMENT OF THE ISSUE

1. Whether the CFC erred regarding its decision that Appellant's predecessor-in-interest granted the fee simple rights in the railroad right of way adjacent to Appellant's property.

## STATEMENT OF THE CASE

CSX Transportation, Inc. ("CSXT") formerly owned an interest in a railroad corridor that is located between milepost Q## 3.79 and milepost Q## 4.5 on its Putnam Branch in Bronx County, New York. The railroad line comprises a total distance of approximately 0.77 miles (the "railroad corridor"). On April 11, 2024, CSXT filed a Notice of Exemption with the STB regarding the railroad corridor. Appx263-335.

On May 10, 2023, the City of New York, New York ("the City") filed its Petition for Notice of Interim Trail Use with the United States Surface Transportation Board ("STB") regarding the railroad corridor. Appx337-344. On May 26, 2023, the STB issued a Notice of Interim Trail Use ("NITU") regarding the railroad corridor. Appx346-348. On July 27, 2023, the City and CSXT notified the STB that the two parties entered into a Purchase Sale Agreement for the rail banking/interim trail use of the approximately 0.77-mile railroad corridor. Appx350-351.

Appellant filed this action on August 18, 2023. Appx12-14. Appellant alleged ownership of land adjacent to the railroad corridor on the date of the NITU, which included the fee title to all that property to the centerline of the railroad corridor now subject to an easement for interim trail use pursuant to the NITU. Appellant further alleged that upon abandonment of the easement and/or authorization of use beyond the scope of the easement, Appellant's property would have been unburdened by any easement and that, but for operation of the Trails Act, Appellant would have the exclusive right to physical ownership, possession, and use of its property free of any easement for recreational trail use or potential future railroad use. Therefore, Appellant alleged, by operation of the Trails Act, the Appellee took Appellant's property and is Constitutionally obligated to pay just compensation.

On December 13, 2024, Appellant filed its motion for partial summary judgment on liability. Pursuant to *Preseault II*'s test, Appellant argued it owned fee simple title to its property which lies adjacent to a portion of the railroad corridor, and that its fee simple ownership included fee simple title to the centerline of a portion of the adjacent railroad corridor. Appx107-149. Appellant claimed it owned fee simple title on the basis that the portion of the railroad corridor was acquired by the establishing railroad – the New York and Boston Railroad Company – via condemnation proceedings against Mr. John Bogardus, the landowner at the time of

the railroad's construction, and that pursuant to New York law the railroad could only acquire an easement limited to railroad purposes. Appx127-132.

Appellee filed its Cross-Motion for Summary Judgment and Response on January 25, 2025. Appx401-411. In its motion, Appellee argued that the portion of the railroad corridor was acquired in fee simple by the New York and Boston Railroad Company. Appx408-409. Appellee's argument was based on a deed that was given to the New York and Boston Railroad Company from John Bogardus and his wife approximately one month after the completion of the New York condemnation proceedings. *Id.*

Appellant acknowledged the deed followed the condemnation proceedings, but pointed out that pursuant to New York law, the New York and Boston Railroad Company's easement rights were not transformed into ownership of the fee simple in the land. Appx475-486. Appellant directed the CFC to a New York case that was directly on point where, after land was acquired via condemnation from the landowner, a deed given that purported to grant the governmental body the fee simple in land was interpreted to merely evidence the landowner's acquiescence to the governmental acquisition. Appx482-484. Appellant also directed the CFC to numerous New York cases that provided that New York interprets such transactions strictly in favor of landowners. Appx482. Therefore, all that was acquired was an easement. Appellant also argued that its point was buttressed by New York deed

construction law which requires that separate deeds or writings executed between the same parties at the same time and concerning the same subject matter should be read together to discern the parties' intent. Appx479-482.

In response, Appellee argued that the subsequent deed should nonetheless control and characterized Appellant's argument as speculation without offering any response on the case Appellant identified as on point. Appx522-528. The CFC heard oral argument by the parties in Washington D.C. on May 5, 2025.

In its Opinion and Order entered on May 7, 2025, the CFC ruled that the New York and Boston Railroad Company acquired the fee simple by virtue of the deed from Mr. Bogardus and his wife. Appx4-5. The CFC did not engage in any analysis or discussion concerning the New York cases cited by Appellant, failing to even identify the primary New York case cited by Appellant. The CFC also did not apply the New York rules of construction relating to the interpretation of separate writings concerning the same subject matter. The CFC entered Judgment in favor of Appellee pursuant to Rule 58 of the Rules of the Court of Federal Claims on May 7, 2025. Appx1. Appellant timely filed its Notice of Appeal of the CFC's decision on June 6, 2025. Appx531-532.

## SUMMARY OF THE ARGUMENT

This appeal focuses on the CFC's decision that the portion of the railroad corridor adjacent to Appellant's property was acquired by the original establishing

railroad in fee simple. The CFC's decision was based on the interpretation of a document that followed thirty-two days after the final order ending the condemnation proceedings. The CFC looked at the deed and went no further. This was the error committed by the CFC. The CFC failed to apply a case directly on point, where in remarkably similar circumstances, a New York court ruled that the grantor's actual intent in conveying the land was simply to acquiesce to the taking with no intent to part with the fee simple. The CFC failed to apply New York's deed construction rules that require a court to consider the railroad acquisition statute in effect, to consider the circumstances surrounding the transaction, and the construction rule that separate instruments that concern the same subject matter and between the same parties are part of the same transaction. The CFC's decision is also contrary to New York's law in favor of reversionary landowners, whereby New York favors the return of land taken from landowners for a public purpose after the public purpose ends.

In New York, easements acquired by a railroad through a condemnation action by authority of the Railroad Corporations Act of 1850, as amended, are limited in scope to railroad purposes. See, e.g., *In re Harlem River Drive, City of N.Y.,* 121 N.E.2d 414, 416 (N.Y. 1954)*; O&W Lines v. St. John,* 228 N.E.2d 370, 371 (N.Y. 1967). This is due to the New York rule providing that unless express authority to take a fee is given, the railroad obtains an easement. *Crouch v. State*, 218 A.D. 356,

358 (N.Y. App. Div. 1926). If the owner of the easement utilizes the easement for some purpose different than what it was acquired for or devotes it to a new public purpose, then the owner of the reversionary interest may assert his right to possession. *Id.* at 362. With respect to what uses are considered new or different, New York takes an extremely strict view. See, e.g., *Beach Land Amusement Co., Inc. v. Staten Island Rapid Transit Ry. Co.*, 153 N.Y.S.2d 692, 697 (N.Y. Sup. Ct. 1956) (easement granted for passenger service was held not to include freight service because freight service "was not within the contemplation of the parties when their agreement was concluded.").

A similar set of facts and circumstances to this case were present in *Silver Beach Realty Corp. v. Geenlan*, 204 N.Y.S. 701 (N.Y. Sup. Ct. 1924), *aff'd sub nom.* 210 A.D. 829 (N.Y. App. Div. 1924). In *Silver Beach*, the landowner's property was first acquired via condemnation, and in the following year, the parties signed an instrument which, like the deed in this case, purported to grant the fee simple. *Id.* at 702. The court determined that the purpose of the deed was merely to indicate that the owner acquiesced to the dedication of his land and there was no intent to transfer the fee simple. *Id.* at 703-04. The *Silver Beach* ruling was consistent with New York's rule that courts "must construe the language of the instrument, which transfers the property for public use, in lieu of condemnation proceedings, strongly and strictly in favor of landowners." *Bradley v. Crane*, 94 N.E. 359, 363 (N.Y. 1911).

It is with this backdrop that the CFC should have interpreted the intent of the parties to the condemnation and the deed.

New York also requires that writings that form part of a single transaction and are intended to effectuate the same purpose be read together. *Nau v. Vulcan Rail & Constr. Co.,* 36 N.E.2d 106, 110 (N.Y. 1941). The condemnation proceeding and the deed are identical in numerous ways. The instruments concern precisely the same tract of land, the parties are nearly identical, the instruments were close in time, and the condemnation award and the amount of consideration in the deed are precisely the same. Accordingly, the two writings should have been read together.

The CFC adopted the view that Appellant's argument was "mere conjecture." Appx4. That is not a fair description. Appellant reported accurately on how railroad conveyances are treated under such circumstances pursuant to New York law. It is not conjecture or speculation to apply New York's laws of deed construction. If it was conjecture in this case, then it was conjecture in the *Silver Beach* case, too.

## ARGUMENT

### I. THE STANDARD OF REVIEW IS *DE NOVO*

The CFC's decision that the New York and Boston Railroad Company obtained fee simple rights in the railroad corridor by the deed from Mr. Bogardus is reviewed on appeal *de novo*. *Casitas Municipal Water Dist. v. United States,* 708

F.3d 1340, 1351 (Fed. Cir. 2013) ("The nature … of a compensable property interest in a takings analysis is a question of law.").

## II. THE CFC INCORRECTLY HELD THAT THE RAILROAD OWNED FEE SIMPLE TITLE IN THE RAILROAD LINE ADJACENT TO APPELLANT'S PROPERTY

### A. In New York, When Land Is Taken For Public Use the Fee to the Land Appropriated For the Public Use Will Remain In the Owner

*Silver Beach Realty Corp. v. Geenlan*, 204 N.Y.S. 701 (N.Y. Sup. Ct. 1924), provides this Court with a roadmap for this appeal. The case was a 1920's property dispute over an old dock in the town of Westchester between the owner of a permit to occupy the dock, and the successor in interest to the original owner of the farm that contained the old dock. *Id*. at 702. The city of New York alleged ownership of fee simple title of the old dock based on an 1801 conveyance from the original owner to the town. *Id*. The city alleged that in 1801 the old dock was acquired for a highway in fee simple based on an instrument of which there was no dispute the instrument seemed to recite transfer of the fee simple. *Id*. Here is the text of the instrument:

> The undersigned commissioners of highways of the town of Westchester do accept said road and dock as they now are as a complete fulfillment of the agreement on the part of the said Abijah Hammond, and the said Abijah Hammond **does hereby convey to the town of Westchester the ground so taken and occupied as aforesaid**.

*Id*. at 703 (emphasis added). The successor to the original owner of the farm disagreed and alleged that the city only acquired an easement for highway purposes notwithstanding the execution of the instrument, with the fee remaining in the

original owner. *Id*. at 702. Because the land had long been abandoned for highway purposes, the successor to the property (as the reversionary interest holder) alleged that he should have full ownership and control over the old dock. *Id*.

The successor's allegation was based on the fact that, approximately one year prior to the execution of the instrument the commissioners of highways of the town, acting under the statute highway laws, took the land for highway purposes via a certificate. *Id*. The certificate recited the purpose of the acquisition and further recited, among other things, that "they 'have laid out and accepted' the said road." *Id*. The successor's argument was that because the highway law did not contain any provisions authorizing the taking of fee title to the land for highway purposes, the condemning authority could not and did not obtain the fee. *Id*. at 703.

The court provided the general rule in New York regarding the treatment of land taken under the statute highway laws:

> The general rule is well settled, both under the common law and under the statute highway laws, that when land is taken by a town from an owner for a highway the town acquires an easement only for the public use, and that, '**when the language and intent of a statute do not otherwise require, the fee to land appropriated for a public use will remain in the owner**.'

*Id*. (citations omitted) (emphasis added). The court then explained that the above rule was applied even in cases where an instrument is given in recognition of the authority's right to condemn, yet without the execution of formal condemnation proceedings. *Id*. The court stated:

> Even in a case where a city is authorized to take a fee simple for a public road by condemnation proceedings, yet where, in lieu of such proceedings, **a voluntary formal conveyance by a quitclaim deed is executed by the owner, granting and conveying the land to the city for a highway, such deed will be construed as granting an easement only, and not a fee simple**.

*Id*. (emphasis added). In further explanation, the court provided the following excerpt from *Bradley v. Crane*, 94 N.E. 359 (N.Y. 1911):

> We must construe the language of the instrument, which transfers the property for public use, in lieu of condemnation proceedings, **strongly and strictly in favor of the landowners.** The law will not, by construction, effect through the instrument a grant of a greater interest or estate than was essential to the public use for which the grant was sought. No implication is permissible that the instrument granted an estate greater than was absolutely necessary to satisfy its language and object.

*Id*. at 363. (emphasis added). The court then provided its interpretation of the original owner's intent in making the second instrument to the city. The court stated that "it was not the intention of the said [owner] to convey, by the said informal instrument, a fee simple … but merely an easement for right of way." *Silver Beach*, 204 N.Y.S. at 703. Given the circumstances surrounding the transaction and considering New York's rules of construction, the court ruled the second instrument "was merely intended to evidence the fact that the commissioners had again accepted the road and dock," with the owner's signing of the second instrument being "merely to indicate that he **acquiesced** in the dedication of his land … but with **no intention of parting with the fee simple**." *Id*. at 703-04. (emphasis added). Consistent with New York's

rules of deed construction, the court discerned the grantor's intent by considering the surrounding circumstances. See *Ray v. Grube*, 131 A.D. 294, 296 (N.Y. App. Div. 1909). Accordingly, the court ruled in favor of the owner's successor, as the owner of the reversionary interest of the old town dock.

The outcome in *Silver Beach* followed from that body of New York law that addresses the limitations on the interests that can be acquired from New York citizens in condemnation proceedings, which calls for instruments transferring property from New York citizens for public use to be interpreted "strongly and strictly in favor of landowners." *Bradley*, 94 N.E. at 363. In *Silver Beach*, the court interpreted the second instrument pursuant to New York's "settled rules of construction" that required consideration of the highway statute. *Silver Beach*, 204 N.Y.S. at 703. The statute contained "no provisions authorizing the taking by a town of the fee title to land for highway purposes." *Id*. This law led to the court's outcome.

New York's strict view of acquisition statutes is not limited to highway acquisitions. In New York, easements acquired by a railroad through a condemnation action by authority of the Railroad Corporations Act of 1850, as amended, are strictly limited in scope to railroad purposes. See, e.g*., In re Harlem River Drive,* 121 N.E.2d at 416*; O&W Lines,* 228 N.E.2d at 371. In New York, "the general rule is that unless express authority to take a fee [by condemnation] is given, the railroad company acquires title **only in the nature of an easement**." *Crouch*,

218 A.D. at 358 (emphasis added). Here is how *Crouch* explained the rule in New York:

> The rule is that, when private property is taken in the exercise of the right of eminent domain, particularly by a private corporation, the taking is limited to the reasonable necessities of the case, to carry out the purpose for which permission to take is given, so far as the owners of the property are concerned.

*Id*. at 361. Therefore, when such an easement is diverted from railroad purposes (or highway purposes in the case of *Silver Beach*), the easement terminates, and the successors-in-interest to the original grantor to the railroad, the current fee owners, are entitled to take possession of the property. *See id.* at 361-62; see also *Schenectady Chemicals, Inc. v. DeLuke Sand & Gravel Co.,* 286 N.Y.S.2d 902, 903 (N.Y. App. Div. 1968); *Heard v. City of Brooklyn,* 60 N.Y. 242, 246-247 (N.Y. 1875). As explained in *Crouch*, "[i]f the owner of such an easement abandons the property, sells it, or devotes it to some purpose foreign to that for which it was acquired, or if it is condemned or appropriated for a new public purpose, the owner of the reversion **may assert his right to possession or claim compensation**." *Crouch*, 218 A.D. at 362 (emphasis added), quoted with approval in *Hayner v. State*, 82 N.Y.S.2d 211, 213 (N.Y. Ct. Cl. 1948); see also *E. C. Brown Co. v. Ontario County*, 123 N.Y.S.2d 546, 561-562 (N.Y. Sup. Ct. 1953).

The Railroad Corporations Act of 1850, as amended, states the following in its description of the extent of the interest said to be acquired by a railroad following a judgment of condemnation:

> [The railroad] company shall be entitled to enter upon, take possession of, and use the said land for the purposes of its incorporation, during the continuance of its corporate existence, by virtue of this or any other act; and all persons who have been made parties to the proceedings shall be divested and **barred of all right, estate and interest in such real estate, during the corporate existence of the company as aforesaid**.

N.Y. Law ch. 140, § 18 (1850). Appx504-505. Although seeming to be entirely consistent with the description of a fee simple estate, the passage is nonetheless construed to pass only an easement. See *O&W Lines, Inc. v. St. John*, 231 N.Y.S.2d 72, 75 (N.Y. Cty. Ct. 1962) (1850 Act "**will be strictly construed**, and the quantum of the title to be taken **will not be extended by implication**.") (emphasis added). Given this strict view in favor of landowners, it should come as no surprise that the court ruled in *Silver Beach* as it did.

### B. The CFC Should Have Followed *Silver Beach* and Ruled that the Subsequent Deed to the Railroad Was the Completion of the Acquisition and the Landowner's Acquiescence to the Condemnation

In this case, there were condemnation proceedings between Mr. John Bogardus and the New York and Boston Railroad Company, which were completed

on April 16, 1872, and included numerous other landowners.[2] Appx359-378. On May 18, 1872, Mr. Bogardus and his wife executed a warranty deed. Appx412-416. The two instruments are in sync in various ways. For example, the condemnation describes the land taken as follows:

> ALL that piece and parcel of land situated in the town of YONKERS, County of Westchester and State of New York, and more particularly designated and set forth on a map of N. Y. and B. R. R., on file in the office of the Register of the County aforesaid, as extending from station No. 1936 + 43 to Station No. 1937 + 18 in the line of lands of Patrick Mullen, BEGINNING and crossing said centre line at station No. 1936 + 43 distant 84 feet on a course bearing north 5 degrees 30 minutes east from the southwest corner of a yellow barn; thence running on a tangent for a distance of 75 feet to a point in the line of lands of Patrick Mullen distant 50 feet on a course bearing north 52 degrees 30 minutes west from the southwest corner of a yellow barn; said parcel of land being 75 feet long on said centre line and 25 feet wide on each side of said centre line free from the encumbrance of a certain mortgage of $1250., now on the same.

Appx365-366. The deed provides precisely the same grant, to the letter:

> All that piece and parcel of land situated in the Town of Yonkers County of Westchester and State of New York, and more particularly designated and set forth on a map of the New York and Boston Rail Road, on file in the office of the Register of the County aforesaid, as extending from Station No. 1936 + 43 to Station No. 1937 + 18, in the line of lands of Patrick Mullen, Beginning and crossing said centre line at Station no 1936 + 43 distant 84 feet, On a course bearing north 5 degrees 30 minutes east, from the southwest corner of a yellow barn, thence running on a tangent for a distance of 75 feet, to a point in the line of lands of Patrick Mullen, distant 50 feet, on a course bearing north 52 degrees 30

[2] The condemnation proceedings include several landowners besides Mr. Bogardus. The Bogardus strip which is at issue in this case is referenced on page 284 of the proceedings as "PARCEL NO. 8." Appx365-366

> minutes west, from the southwest corner of a yellow barn; said parcel of land being 75 feet long on said centre line and 25 feet wide on each side of said center line, free from the encumbrance of a certain mortgage of $1,250, now on the same.

Appx413. The two instruments are identical down to the railroad stationing numbers and the property description and even mention the same mortgage encumbering the strip of land.

In addition, the condemnation and the deed concern functionally the same parties,[3] and recite the exact same compensation – $750. Appx355 ("to John Bogardus the sum of Seven hundred and fifty dollars as Compensation for Parcel No. 8."); Appx413 ("Witnesseth, That the said parties of the first part, for and in consideration of the sum of Seven hundred and fifty Dollars … to them in hand paid by the said party of the second part.").

Yet, the evidence is that Mr. Bogardus was paid only $750 for the strip of land, not a total of $1,500. This is indicated in the Interstate Commerce Commission ("ICC") Valuation Schedule provided by Appellant, which references the condemnation order and the subsequent deed. Appx355. As seen in the second and third lines in column eighteen of the Valuation Schedule, there is only a single $750

---

[3] The condemnation does not name Johanna Bogardus, the wife of John Bogardus, but the deed does.

entry for the cost of the parcel. *Id*. This conclusion is supported by the relevant ICC orders, whereby the ICC required that the Valuation Schedules report the following:

> [T]he cost of the parcel to the carrier when originally acquired, and a statement in detail of the amount and character of each expenditure which entered into such cost, and the cost at the time of its dedication to public use of so much of each parcel as is owned or used for common-carrier purposes at the present time, **showing separately the cost of condemnation and damages**, or of **purchase ascertained as of the time of such dedication**.

*See* Interstate Com. Comm'n, Orders, Instructions and Forms Pertaining to Schedules of Land (Nov. 21, 1914) (commonly referred to as Valuation Order Number 7 and modified with supplemental instructions dated November 1, 1916) (emphasis added).[4] With respect to where such information was to be inserted into the Valuation Schedules, the ICC required:

> **The eighteenth column** shall contain the cost of the remainder of the original parcel now owned or used for common-carrier purposes ascertained as of the time of dedication to public use, showing in two separate items the cost of **condemnation and damages, or of purchases and the other elements of cost in one aggregate sum, so that the sum of the two items shall represent the total cost**.

*Id*. (emphasis added). Thus, the reporting railroad was required to report in column eighteen the total cost of the parcel in one aggregate sum, which included the cost

[4] These orders, as amended, were subsequently codified in parts 151 and 152 of title 49 of the 1938—and first—edition of the *Code of Federal Regulations*.

of condemnation or purchase. Appx355. Since only $750 was reported, the uncontroverted evidence is that this is all that was ever paid and, further, the $750 was paid as a result of the condemnation proceedings. See *Friedman v. Ender*, 116 N.Y.S. 461, 464–65 (N.Y. Sup. Ct. 1909) ("But the consideration stated in a deed and the acknowledgment of its receipt is never conclusive, even as between the parties, and **the true consideration, and the amount, if any, actually paid, may always be shown**. The deed itself is merely presumptive evidence, and the presumption may be rebutted by other evidence.") (emphasis added).

In addition, column thirteen of the Valuation Schedule provides some insight into the parties' understanding of the intent behind the second instrument. This column reports to the ICC "THE DATE OF DEDICATION TO PUBLIC USE." *See* Appx355. Here, the Valuation Schedule provides that the land was dedicated on April 1, 1871, a date consistent with when the condemnation proceedings were initiated. Appx359-378. This reflects an understanding by the ICC reporting railroad that the source of its interests is the condemnation proceeding, not the second instrument.

Here, the New York and Boston Railroad was already under obligation to pay Mr. Bogardus $750 for the cost of the right of way across his land at the time of the execution of the deed. Furthermore, Mr. Bogardus did not receive anything of legal value relating to execution of the deed because the court required the railroad to pay

him $750 regardless of whether he executed his deed. In light of this evidence, the deed fails for lack of consideration because Mr. Bogardus gained nothing and the railroad gave up nothing relating to execution of the deed. See *Anand v. Wilson*, 32 A.D.3d 808, 809 (N.Y. App. Div. 2006) ("Consideration consists of either a benefit to the promisor or a detriment to the promisee"); *Curtis Props. Corp. v. Greif Companies*, 212 A.D.2d 259, 264 (N.Y. App. Div. 1995) (citing *Calamari & Perillo, Contracts § 70*, at 134) ("In essence, a contract is a promise supported by consideration and, in the case of a bilateral contract such as this, the promise of each party must be based upon valuable consideration. Plaintiff cannot be regarded as having bargained for the privilege of rendering its services to defendants without also imposing some reciprocal obligation upon them"); *Kinley Corp. v. Ancira*, 859 F. Supp. 652, 657 (W.D.N.Y. 1994) ("If the promisor loses nothing, and the promisee acquires nothing by an arrangement, there is no valid consideration"); *Keller-Wala v. Coello*, 224 A.D.3d 892, 893 (N.Y. App. Div. 2024) ("To establish the existence of an enforceable agreement, there must be consideration, among other things").

These facts – the identical strip of land conveyed, the identities of the parties, the single payment of the condemnation award, the indications on the Valuation Schedule, the instruments being approximately a month apart – all lead to the conclusion that the condemnation and subsequent deed are inextricably linked to

each other. There is nothing in the deed to indicate there was some separate purpose to be served by executing the deed. There is no mention of additional uses such as for a railroad depot. The two transactions were for the same purpose – to enable the railroad to conduct railroading operations over the condemnee's/grantor's land. There is nothing in the deed that identifies more than merely the same seventy-five-foot-long stretch of railroad right of way.

The CFC ignored all these facts in its Opinion. The CFC should have sought to ascertain the intent of Mr. Bogardus in making the subsequent deed in light of these facts and circumstances and applied "the settled rules of construction to the [railroad] statute," just like the court did in *Silver Beach*. See *Silver Beach*, 204 N.Y.S. at 703. The CFC did not do so. The CFC's opinion is devoid of any reference to *Silver Beach*, it is devoid of any reference to the Railroad Corporations Act of 1850, and it is devoid of any mention of the case law that **requires** the court to construe instruments in these circumstances "strongly and strictly in favor of landowners." *Bradley*, 94 N.E. at 363. All this, notwithstanding that *Silver Beach* and these rules of construction were brought to the CFC's attention during briefing on the parties' cross-motions for summary judgment. Appx470-493; Appx521-530.

*Silver Beach* is directly on point, the facts are remarkably similar to those in this case, and the CFC should have followed the precedent established in that case. In *Silver Beach,* the title history began with the current owner's predecessor-in-

interest's farmland being condemned for highway purposes by means of New York's highway law. *Silver Beach*, 204 N.Y.S. at 702. In this case, the title history began with Appellant's predecessor-in-interest, Mr. John Bogardus, land being condemned for railroad purposes by means of New York's Railroad Corporations Act of 1850. Appx365-366.

Approximately one year following the *Silver Beach* condemnation the parties to the condemnation proceedings executed a second instrument which, on its face, purported to transfer fee simple rights to the condemned property. *Silver Beach*, 204 N.Y.S. at 703. This instrument was entirely consistent with the certificate that called for the acquisition of the property. *Id.* at 702. In the present case, thirty-two days following the completion of the condemnation action against Mr. Bogardus, Mr. Bogardus and his wife executed a warranty deed which, on its face, purported to transfer fee simple rights to the condemned property. Appx412-416. The condemnation decree (Appx365-366) was identical in all pertinent aspects to the warranty deed, utilizing the identical description of the decree, and reciting as its consideration the precise amount to be paid to Mr. Bogardus for his land (Appx413).

In *Silver Beach*, the court considered the highway law statute in force at the time of the *Silver Beach* condemnation, whereby the condemning authority acquires only an easement for public use. *Silver Beach*, 204 N.Y.S. at 703 (explaining that in New York, "when the language and intent of a statute do not otherwise require, the

fee to land appropriated for a public use will remain in the owner.”). In this case, the CFC should have recognized and considered that under New York’s Railroad Corporations Act of 1850 a railroad is strictly limited to an easement for railroad purposes when it condemns property for its right of way. *Crouch*, 218 A.D. at 358 (explaining that in New York, “the general rule is that unless express authority to take a fee [by condemnation] is given, the railroad company acquires title only in the nature of an easement.”).

Applying and following New York’s rules of construction, *Silver Beach* held that the second instrument conveyed an easement only. *Silver Beach*, 204 N.Y.S. at 703 (explaining that in New York such instruments are construed in favor of landowners and holding “that it was not the intention of the said [grantor] to convey, by the said informal instrument, a fee simple to the town of Westchester, but merely an easement for the right of way to the road in question.”). In this case, the CFC declined to follow New York’s rules of construction, it ignored *Silver Beach*, and it dismissed Appellant’s arguments “as mere conjecture,” focusing solely on the warranty deed. Appx4 (“[U]nder New York state law, the deed unambiguously conveyed the property at issue to [the railroad].”).

It was not “mere conjecture” for Appellant to ask the CFC to interpret the warranty deed in light of New York’s rules of construction. If it was, then it was conjecture on the part of the court in *Silver Beach* to rule as it did, since it did exactly

what Appellant stated the CFC should do, which is to discern the intention of the parties in light of the fact that the Boston and New York Railroad had already taken Mr. Bogardus's land. See *Barber v. City of New Rochelle*, 99 N.Y.S.2d 393, 395 (N.Y. Sup. Ct. 1950) ("The effect of [the] deed must be determined on a consideration of the circumstances surrounding its delivery and acceptance and the position of the parties at that time.").

*Silver Beach* and this case are not only strikingly similar on their facts, but they are also strikingly similar in posture. The *Silver Beach* decision is a 1924 case where the Court was tasked with discerning the intentions of the parties, *i.e.*, construing a decades-old instrument, which, on its face, unambiguously transferred fee simple rights. In this case, in 2025, the CFC was tasked with discerning the intentions of the parties, *i.e.*, construing a decades-old instrument, which, on its face, unambiguously transferred fee simple rights. The CFC ignored *Silver Beach* and the New York law *Silver Beach* applied.

### C. Following *Silver Beach* Makes Sense In Light of the Circumstances Surrounding the Second Transaction.

In *Silver Beach*, the New York court was faced with the exact choice here where, as the CFC did, it could have simply dismissed the citizen's case by pointing to the simple rule that the second instrument was clear and unambiguous. Appx4 (citing *Camp Bearberry, LLC v. Khanna*, 234 A.D.3d 1158, 1160 (N.Y. App. Div. 2025) ("a property deed's four corners are determinative, unless there is some textual

ambiguity.”)). *Silver Beach* did not say the second instrument “simply conveys property” and dismissed the matter. *See id*. at 4. Instead, *Silver Beach* considered the New York rules of construction, the circumstances of the parties, New York law concerning acquisition statutes, and it came to the following logical conclusion:

> [T]he instrument in question, made in 1801, was merely intended to evidence the fact that the commissioners had again accepted the road and dock, with the alterations, for public use, and that Hammond had signed the said second instrument merely to indicate that **he acquiesced in the dedication of his land ‘**so taken and occupied as aforesaid’ for such public use, **but with no intention of parting with the fee simple, which was not necessary for such purpose**.

*Silver Beach*, 204 N.Y.S. at 703-04 (emphasis added). That logical conclusion is the only conclusion that can be drawn from Mr. Bogardus’s decision to voluntarily execute a deed that described the precise tract of land that had just been taken from him thirty-two days prior (for the same price no less) in an *in invitum* proceeding.[5] When determining intent, the Court should consider the parties’ reasons for choosing to make the contract. See *Bradley*, 94 N.E. at 362 (“The fact that the city then held a highway easement merely in the two rods of land which formed the road is or may be a reason the parties may not have intended the city of New York should receive under the instrument an estate other than an easement, because it would have **no serious reason for acquiring this land**, to be used in widening and

[5] *In invitum* connotes an action “[a]gainst an unwilling person.” *Black's Law Dictionary* (12th ed.2024).

continuing the road, **an interest superior to that held in the existing road**.") (emphasis added); *Lipton v. Bruce*, 136 N.E.2d 900, 904 (N.Y. App. Div. 1956) ("it has always been the rule that the language of a deed must be so interpreted and applied as to **be meaningful and valid.**") (emphasis added).

It is unlikely the New York and Boston Railroad and Mr. Bogardus would see much of a distinction between the interest taken in the condemnation proceedings and the deed. The Act of 1850 described the breadth of the interest taken as extensive. See *N.Y R.R. Law ch. 140, § 18* (1850) ("all persons who have been made parties to the proceedings shall be divested and barred of all right, estate and interest in such real estate, during the corporate existence of the company as aforesaid."); *Crouch*, 218 A.D. at 360-61 (explaining that that the railroad's title following condemnation proceedings "is hostile to the fee owner, and its use and occupancy of the lands are exclusive, constituting a permanent easement."). In truth, although classified as an easement, the interest acquired has been described as "something more .. than an easement, something in the nature of a determinable fee, limited to the railroad's continuous operation." *O&W Lines, Inc.,* 231 N.Y.S.2d at 75. See also *Vandermulen v. Vandermulen*, 15 N.E. 383, 385 (N.Y. 1888) (explaining that "the interest acquired, whatever [the railroad's title acquired by condemnation proceedings] exact legal character, was scarcely less than a fee.").

That the deed is the completion of the taking and the fulfilling of the New York and Boston Railroad's pre-existing obligation to pay Mr. Bogardus is consistent with the fact that there is nothing said in the condemnation proceedings that could be interpreted as completing the transfer of Mr. Bogardus' land to the railroad.[6] The court makes its findings concerning the amount of money to be paid for the land and states: "IT IS ORDERED that the said appraisal and report be and the same are hereby in all thing and respects approved and confirmed…." Appx375.

The court then proceeds to reiterate the amounts to be paid to the landowners. Appx375-377. Considering this, the deed appears more in line of an intent by Mr. Bogardus to complete the taking, *i.e.*, to formally transfer rights in the land to the railroad and execute his obligations. This supports the view ultimately taken by the court in *Silver Beach*, that the deed evidences Mr. Bogardus' acquiescence to the dedication of his land. See *Silver Beach*, 704 N.Y.S. at 704.

---

[6] In *Hayner v. State*, 82 N.Y.S. 2d 211 (N.Y. Ct. Cl. 1948), the court explained that in condemnation proceedings by the Buffalo, Lockport and Rochester Railway Company whereby the railway acquired a strip for the operation of a street surface railway, judgment was entered for the railway to take the strip "for the public use hereinbefore specified," and that after payment of the compensation, the company "shall be entitled to enter into immediate possession of the property condemned … and to take and hold said property for the public use, as specified in said judgment." *Id*. at 211–12.

That conclusion is further consistent with the value of what the New York and Boston Railroad could ever be said to have "bought" with the warranty deed. Condemnation proceedings under the 1850 Act vests a railroad with a permanent easement for railroad purposes. *O&W Lines*, 228 N.E.2d at 371. Accordingly, following the condemnation proceedings, Mr. Bogardus merely owned the right to take possession of the land if the railroad abandoned the use for railroad purposes. See *Erie Lackawanna Ry. Co. v. State*, 38 A.D.2d 463, 464 (N.Y. App. Div. 1972) ("The [railroad's] easement is determinable in that if the railroad abandons the use of the property for railroad purposes, the original owners of the property or their successors prior to the condemnation would be entitled to take possession of the property."). This "technical reversion" has been defined as "so remote that its value is scarcely appreciable." *Vandermulen*, 15 N.E. at 385. The CFC's holding is therefore inconsistent with what could ever be said to be have been actually acquired by the New York and Boston Railroad by the second transaction – a property interest

worth virtually nothing, let alone $750.[7] See *Erie Lackawanna*, 38 A.D.2d at 466 ("at the time of [the railroad's] appropriation the possibility that the reverter would ripen into possession was so speculative and remote, such interest should be given only a nominal value"); *Roby v. New York Cent. & H.R.R. Co.*, 36 N.E. 1053, 1054 (N.Y. 1894) ("While it has been held in some cases that the owner of the fee, subject to the railroad easement, has some right to use the land taken, not inconsistent with the easement, the better view of the law, supported by the greater weight of authority, is that the use of the railroad company, while the easement exists, is exclusive of the owner of the fee."); *In re Ludlow Ave. & Whitlock Ave. in City of New York*, 164 A.D. 839, 840, (N.Y. App. Div. 1914) (explaining that as to the public street "[i]t is not disputed but that this land is so impressed with easements for street purposes that its fee value in this proceeding is merely nominal.").

[7] In addition, the $750 already paid likely already represented the complete fee value of the strip of land already taken. See *Hudson & M.R. Co. v. Wendel*, 85 N.E. 1020, 1024 (N.Y. 1908) (quoting *Wood on Railroads § 245*) ("The title acquired [in condemnation proceedings] is an easement, but it is an easement in the nature of a fee, and in the assessment of damages no difference is made because of the reversionary right, but damages for the full value of the land are given."); *Miner v. New York Cent. & H.R.R. Co.*, 25 N.E. 339, 341 (N.Y. 1890) ("It is believed that a possible reverter of the land is never contemplated in the assessment of damages in [condemnation] cases, and that the appropriation is regarded as permanent, and the damages are awarded upon that basis.").

Mr. Bogardus' decision to voluntarily execute a deed regarding land that already been taken from him, at no additional cost to the railroad, could have been to address the fact that his wife was not a party to the condemnation proceedings and her property rights were not transferred in those proceedings. Under the Act of 1850, only "persons who have been made parties to the proceedings shall be divested of all right, estate and interest in such real estate…" *N.Y R.R. Law ch. 140, § 18* (1850). Thus, the deed may have been needed to address Johanna Bogardus' "dower & rights of dower property, possession, claim and demand whatsoever…." Appx414-415. If widowed, Johanna Bogardus' common law "dower" rights would entitle her to a life interest in one-third of the land which her husband had obtained at any time during marriage and which was inheritable through the marriage. See *Estate of Hermann v. C.I.R.*, 85 F.3d 1032, 1034 (2d Cir. 1996).

It makes sense that Johanna Bogardus' dower rights and the dower rights of the other spouses would have to be addressed in the taking of a railroad easement, which becomes the perpetual and exclusive possession of the railroad, therefore rendering the burdened estate valueless. See *Crouch*, 218 A.D. at 360-61 (explaining that a railroad's easement is "hostile to that of the fee owner, and its use and occupancy of the lands are exclusive … compensation is ordinarily based on the total value."). Indeed, although numerous other spouses are compensated by the taking, Mrs. Bogardus is not. *See, e.g.*, Appx362 ("To Abram B. Odell, Charles H.

Odell and Mary his wife"); Appx368-369 ("to J. V. Rushton and Belinda, his wife"); Appx371 ("to William L. Cowdrey and Sarah L., his wife"). The deed may simply be an example of a railroad's lawyer being careful and thorough and correcting an oversight.

Moreover, there is no evidence that the New York and Boston Railroad would ever gain any benefit from a fee simple interest as opposed to an easement. See *Bradley*, 94 N.E. at 362 (interpreting a conveyance as a transfer of an easement and noting "[t]he intention and purpose of the parties did not necessitate the conveyance of the fee of the land, and would be completely fulfilled by the easement therein of the free and common right of way to the public, with the powers and privileges incident thereto."). It is well known that a railroad only requires an easement to conduct its railroading operations (see *Great N. R. Co. v. United States*, 315 U.S. 262, 272 (1942) ("a railroad may be operated though its right of way be but an easement"), because a railroad's easement is considered to be a substantial thing, having the "attributes of the fee, perpetuity and exclusive use and possession…." See *New Mexico v. United States Trust Co.*, 172 U.S. 171, 183 (1898); see also *Bradley*, 94 N.E. at 363 ("There is nothing inconsistent in the public use of land as a road and the retention by the landowners of the fee, subject to the easement."). And there is no logical reason why the New York and Boston Railroad would seek out fee simple rights in the area limited to the seventy-five foot strip acquired from

Mr. Bogardus. The condemnation proceedings identify numerous other landowners besides Mr. Bogardus (Appx361-377), and the valuation schedules do not report secondary transfers for all of those (Appx355). When examining intent, the question must be asked how the railroad's business would be enhanced by possessing a seventy-five foot fee simple strip surrounded by easement strips.

*Silver Beach* tells this Court that in these circumstances a court **should not interpret the second instrument as an intent to transfer the fee simple**, but instead to evidence the grantor's **acquiescence to the dedication of his land already taken and occupied**. See *Silver Beach*, 204 N.Y.S. at 703-04. In short, *Silver Beach* is controlling precedent applying New York rules of construction. The CFC declined to follow it or even analyze it, and the CFC's decision should be reversed. See *Matter of Eckart's Est.*, 348 N.E.2d 905, 908 (N.Y. 1976) ("In cases involving the transfer of property especially, where it can reasonably be assumed that settled rules are necessary and necessarily relied upon, stability and adherence to precedent are generally more important than a better or even a 'correct' rule of law.").

### D. *Silver Beach* is Also Consistent With New York Deed Construction Rules That Require the Court Consider Whether Multiple Writings Form Part of the Same Agreement

When there are separate deeds or other writings executed between the same parties, at substantially the same time, and relating to the same subject matter, New

York's rules of construction require that the instruments be read as one. *Nau v. Vulcan Rail & Constr. Co.*, 36 N.E.2d 106, 110 (N.Y. 1941). NEW YORK JURISPRUDENCE (2d ed. 2024) further explains the use of such construction to preserve the intent of the grantor:

> In ascertaining the intention of the parties to a deed, it is a well-settled rule of construction that separate deeds or other writings executed between the same parties at the same time and relating to the same subject matter and so constituting parts of one transaction, should be read and construed together as forming parts of one assurance or agreement. Accordingly, separate instruments may be construed together to determine the object and purpose of the grantor in making the conveyance and the rights of all parties concerned.

43A N.Y. Jur. 2d Deeds § 227. As stated in *TVT Records v. Island Def Jam Music Group*, 412 F.3d 82 (2d Cir. 2005), "the legally operative question is whether the contracts were part of a single transaction." *Id*. at 89-90. "Whether multiple writings should be construed as one agreement depends upon the intent of the parties." *Commander Oil Corp. v. Advance Food Serv. Equip.,* 991 F.2d 49, 52–53 (2d Cir.1993). Such intent, like any examination of intent, is ascertained in part by the surrounding circumstances. See *Gosstol Realty Corp. v. Gillman*, 224 A.D. 63, 67 (N.Y. App. Div. 1928) ("The construction of the deed may be determined by the intention of the parties, when their relations and the circumstances surrounding the transaction are considered.").

To determine whether multiple writings form part of the same transaction, the court must consider whether they are "designed to effectuate the same purpose."

*TVT Records*, 412 F.3d at 89. The rule stands even if the writings are executed on different dates and the parties are not exactly the same. *Id*. The court considers factors including if they "were executed at substantially the same time [and] related to the same subject-matter." *Nau*, 36 N.E. at 110.

The CFC based much of its ruling on the typical rule that the four corners of the deed control where there is no ambiguity. Appx4-5. The CFC stated that the deed "hints at no previous engagement or decision by the parties … [and] just conveys property with full rights of ownership to the New York and Boston Railroad Company." Appx5. As explained *supra*, the two instruments are replete with similarities and contain portions of identical text. The CFC also appeared to be under the mistaken impression that there needed to be some ambiguity in the Bogardus deed before considering the context, stating that "under New York state law, the deed unambiguously conveyed the property at issue." Appx5. The CFC did not consider that the condemnation and the deed served the same purpose – to enable the New York and Boston Railroad to establish its right of way over the land owned by Bogardus. And it did not consider that the two instruments are extremely close in time – approximately one month – and the subject matter is precisely the same, as the condemnation and the deed recite precisely the same description and consideration, down to the letter and number. In other words, the CFC did not

consider whether the two transactions in fact formed part of the same transaction, like New York law says it should have.

If the rules of construction were as the CFC held, then the *Silver Beach* case would have certainly turned out differently. There was no preliminary finding of ambiguity in *Silver Beach*, yet the New York court proceeded to interpret the instruments in front of it (over one-hundred years later) as a matter of law and in consideration of the facts and circumstances in the case. *Silver Beach*, 204 N.Y.S. at 703 (court considered the prior transaction and applied "settled rules of construction to the statute and the instrument signed by [the grantor]"). There is also no ambiguity required prior to a New York court construing multiple writings as constituting parts of one transaction. *Nau* and *TVT Records* did not premise their same transaction analysis following a preliminary determination of ambiguity. Those cases performed the analysis as a matter of course because it is a rule of construction in New York. See NEW YORK JURISPRUDENCE (2d ed. 2024) ("it is well-settled rule of construction that separate deeds … relating to the same subject matter and so constituting parts of one transaction, should be read and construed together as forming parts of one assurance or agreement"). Moreover, it is the case that a court may inquire into the surrounding circumstances when discerning intent. *Lipton*, 136 N.E. at 904 ("[T]he intent of the parties as evidenced by the deed and the

circumstances surrounding the making thereof must be given expression wherever it is possible to do so without violating law and reason.”).

These rules of New York deed construction further support Appellant’s argument that the deed is simply the completion of the condemnation proceeding. It is merely the landowner’s acceptance, acknowledgment, and acquiescence of and to the reality that his property has been forcibly taken from him.

### E. The CFC Should Have Upheld New York Law and Interpreted the Second Instrument Strongly and Strictly In Favor of the Landowner.

The extent to which New York favors landowners in these circumstances cannot be overstated. In New York, land “‘held and used only for the purposes of the corporation during the continuance of the corporate existence’ . . . has been construed as granting a railroad only an easement in property taken by condemnation which terminates when the railroad ceases operation and abandons the use of the property.” *In re Harlem River Drive, City of New York, Appeal of Coogan, et al.*, 121 N.E.2d 414, 416 (N.Y. 1954). In *Hudson & M.R. Co. v. Wendel*, 85 N.E. 1020 (N.Y. 1908), the court provided the following explanation for New York’s strict view favoring landowners:

> In all cases where private property is taken for public convenience, the extent and quality of the interest in the property taken should be measured by public convenience and necessity. In construing statutes relating to taking private property for public use, the reason for the exercise of the power of eminent domain must be kept in mind, and then the rules of law generally accepted as controlling upon the courts

> in such cases will point to a conclusion in harmony with constitutional private rights and recognized public interests.

*Id*. at 1023. Consistent with this view, even in those instances where a voluntary conveyance is given by landowners in lieu of condemnation proceedings, the conveyances are interpreted "strong and strictly in favor of landowners." *Silver Beach*, 204 N.Y.S. at 703 (quoting *Bradley*, 94 N.E. at 363). Similarly, where the final condemnation order might mistakenly identify the interest take as the fee in the lands, New York will attach "no significance to it whatsoever." *Crouch*, 218 A.D. at 361.

The policy is also expressed in cases where, when given any opportunity, New York refuses to allow easements taken for railroad use to be used for a purpose even slightly different than railroad use. In *Beach Land Amusement Co. v. Staten Island Rapid Transit Ry. Co.,* an easement granted for passenger service was held not to include freight service because freight service "was not within the contemplation of the parties when their agreement was concluded." 153 N.Y.S.2d at 697. Because the easement terminated, the fee owner was entitled to possess the land unencumbered by any easement. *Id*. at 701. In *Heard v. City of Brooklyn,* the railroad had acquired an easement for railroad purposes through a condemnation proceeding. 60 N.Y. at 246-247. Later, the railroad conveyed its interest to the City of Brooklyn for use as a public street. *Id.* The Court held that the conveyances by the railroad to the city "were effectual as a relinquishment of the right of the railroad company to the use

of the land for the purposes of its incorporation, and as a consent, on its part, that the land be thereafter devoted to the purposes of a public street forever." *Id.* at 246. But, the conveyances did not divest the fee owners of their estate in the land nor of their "right to re-enter on the termination or abandonment of its use for railroad purposes." *Id*.

New York cases interpreting analogous non-railroad easements are in accord that easements should be construed narrowly. In *Porter v. Int'l Bridge Co.*, the city of Buffalo had acquired an easement for a public square and then conveyed the land to a railroad for its access to the International Bridge. 93 N.E. 716, 718-19 (N.Y. 1910). The Court deflected the irrelevant question of whether the railroad use and the public square use were both public purposes and, instead, set out the proper question of whether the one proposed use for access to a bridge was consistent with the devotion of the land to the purposes of a public square. *Id*. at 718. The court recognized that a railroad is a public use and that a public square is an open space which may be "used as a common passageway for foot passengers and teams passing from one road to another, and as a place for military parades and ball playing and other amusements." *Id.* at 719. However, despite the fact that both uses were public, railroad use was held to be inconsistent with use as a public square, which was the use for which the property was dedicated. *Id.* ( explaining that "[h]owever desirable this occupation [by the railroad] may be even in the public interest – and the trial

court has expressly found that the premises in question are a necessary approach to the International bridge – it is incompatible with what may be termed a public square use, which imports more openness and a greater freedom from obstruction than is permitted by the presence of a railroad bridge and depot.”). Because it had conveyed the property to the railroad for a different public use, the easement terminated and the successors in title to the original grantors had the right to eject the railroad and the city of Buffalo from the property. *Id.* at 720.

Similarly, in *E. C. Brown Co. v. Ontario County*, an easement taken for a public purpose – a public square – could not be used for a non-public square purpose; in fact, even if only a small part of it were no longer used as a public square, the entire parcel would revert to the grantors: “Any appropriation of any portion of the property [] whether such appropriation be by a deed of a portion of the property, the whole property, **or by some use foreign to the purpose** set forth in the deed from [the grantors] would result in the destruction of the title of the County of Ontario to the entire square and in a reversion of such title to those who, at the time of the appropriation in violation of the terms of the original deed, [are successors of the original grantors].” 123 N.Y.S.2d at 561-562 (emphasis added).

In New York, easements taken for one use simply cannot be put to a different use, even when they are originally taken for a public transportation use and a different public transportation use is imposed. See e.g., *Craig v. Rochester City &*

*Brighton R.R. Co.*, 39 N.Y. 404, 411 (N.Y. 1868) (easement for street purposes does not include railroad use within part of street); *Mahon v. New York Central Railroad Company*, 24 N.Y. 658, 661 (N.Y. 1860) ("use of land for a railroad is totally different from that public right of passage for which highways were designed"); *Heard*, 60 N.Y. at 246-247 (when railroad appropriates land for its own use, it is not lawful to add use even as a public street or highway).

The reason for this policy is that when the public use for the taking ends, the land returns to the citizen owner of the reversionary property rights. As a result, a very real presumption arises in favor of New York landowners. See *Mott v. Eno*, 74 N.E. 229, 233 (N.Y. 1905) ("The general rule is that when the language of the statute will bear a construction which will leave the fee in the landowner, that construction will be preferred. If the title to land in the bed of a highway depends upon presumptions, the general rule seems applicable that only an easement was taken."); see also *Hudson & M.R. Co. v. Wendel*, 85 N.E. 1020, 1023 (N.Y. 1908) (quoting *Randolph on Eminent Domain* § 206) ("Where a private corporation is the actor the taking of an absolute fee should never be presumed.")); *Erie Lackawanna Ry. Co.*, 38 A.D.2d at 465 ("There is considerable logic to a statutory scheme which prohibits the railroad from condemning private property for railroad use and then allowing the railroad to alienate the property for non-railroad uses as a common land speculator.").

## III. CONCLUSION

In this case, the second transaction was the completion of the taking. It was the landowner's acknowledgement that his land was being taken from him. As a result, New York law holds that the current owner of the reversionary interest should have been able to reclaim the land taken. This Court should reverse the CFC's Judgment and rule that this was the transfer of an easement which then ceased, and Appellant, as owner of the reversionary interest, should have been able to assert its right of possession under New York law.

STEWART, WALD & SMITH, LLC

By: /s/ *Michael J. Smith*

Michael J. Smith
Steven M. Wald
3636 S. Geyer Rd., Suite 200
St. Louis, MO 63127
(314) 720-0220
(314) 899-2925 (facsimile)
wald@swslegal.com
smith@swslegal.com
**ATTORNEYS FOR PLAINTIFF/APPELLANT**

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** **2025-1849**

**Short Case Caption:** **233rd Street Partnership, L.P. v US**

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 10,821 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ______ lines of text.
- [ ] the filing contains ______ pages / ______ words / ______ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ______).

Date: 08/07/2025

Signature: /s/ Michael J. Smith

Name: Michael J. Smith

Save for Filing

# ADDENDUM

# In the United States Court of Federal Claims

**No. 23-1358 L**
**Filed: May 8, 2025**

| | | |
|---|---|---|
| ********************************** | | |
| **233RD STREET PARTNERSHIP, L.P., Plaintiff,** | * * | **JUDGMENT** |
| | * | |
| **v.** | * | |
| | * | |
| **THE UNITED STATES, Defendant.** | * * | |
| ********************************** | | |

Pursuant to the court's Opinion and Order, filed May 7, 2025, granting defendant's cross-motion for summary judgment, and denying plaintiff's motion for partial summary judgment,

IT IS ORDERED AND ADJUDGED this date, pursuant to Rule 58, that judgment is entered in favor of the defendant.

Lisa L. Reyes
Clerk of Court

By: s/ Taryn Fry
Deputy Clerk

NOTE: As to appeal to the United States Court of Appeals for the Federal Circuit, 60 days from this date, see RCFC 58.1, re number of copies and listing of all plaintiffs. Effective December 1, 2023, the appeals fee is $605.00.

# In the United States Court of Federal Claims

No. 23-1358
Filed: May 7, 2025

| | |
|---|---|
| 233RD STREET PARTNERSHIP, L.P., Plaintiff, | ) |
| v. | ) |
| THE UNITED STATES, Defendant. | ) |

*Michael J. Smith*, Steward, Wald & Smith, LLC, St. Louis, MO, for plaintiff.

*Peter W. Broker*, United States Department of Justice, Environment and Natural Resources Division, New York City, N.Y., for defendant.

## OPINION AND ORDER

***SMITH*, Senior Judge**

Can a permanent physical taking claim succeed if the alleging party has no ownership interest in the land seized by the federal government? The answer is obviously no. *Schulenburg v. United States*, 137 Fed. Cl. 79, 87 (2018) ("To establish a taking, Plaintiffs must establish their ownership interest in the private property allegedly taken." (citing *Cienega Gardens v. United States*, 331 F.3d 1319, 1328 (Fed. Cir. 2003)). Therefore, the Fifth Amendment takings claim brought by plaintiff, 233rd Street Partnership, L.P. ("the Partnership"), an entity that lacks ownership over the allegedly seized property in Bronx County, New York, fails as a matter of law. *See generally* Complaint at 1, ECF No. 1 [hereinafter Compl.]. Defendant the United States of America's cross-motion for summary judgment, ECF No. 28, is consequently granted, and the Partnership's motion for partial summary judgment, ECF No. 27, is denied.

### I

The property allegedly owned by the Partnership is located at 170 West 233rd Street, Bronx, New York. *See* Plaintiff's Motion for Partial Summary Judgment at 1, ECF No. 27 [hereinafter Pl.'s Mot.]. Across this property is an easement set-aside for a railroad, C.S.X. Transportation, Inc ("C.S.X."). *Id.* at 5–6; *see also* Defendant's

Combined Opposition to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment at 2, ECF No. 28 [hereinafter Def.'s Mot.]. The easement is in service of a rail corridor that runs for 0.77 miles on C.S.X.'s Putnam Branch in Bronx County, New York. *See* Def.'s Mot. at 2 (citing Pl.'s Ex. C, ECF No. 27-4). The Partnership's parcel is almost directly in the middle of this corridor. *Id.*

C.S.X. is the successor-in-interest to the New York and Boston Railroad Company that acquired the easement on April 1, 1872. *See id.* (citing Pl.'s Ex. J at 8–9, ECF No. 27-11). In 1872, the easement overlayed property—the same Partnership property allegedly seized by the federal government today—that was owned by Mr. John Bogardus. *Id.* at 2–3. On May 18, 1872, Mr. Bogardus executed a warranty deed conveying his fee simple ownership interest in the property at issue to the New York and Boston Railroad Company. *See generally* Def.'s Mot. Ex. A, ECF No. 28-1. For over 150 years, this warranty deed has controlled ownership of the Bronx property and did not become controversial until C.S.X. discontinued the corridor's rail line in the 1990s. Def.'s Mot. at 3 (citing Pl.'s Ex. B-1 at 26:21–27:16, ECF No. 27-2).

Since the C.S.X. rail line discontinuance, the City and State of New York began plans to develop the corridor as a park—and formalized that intent in January 2011 via the City of New York's zoning authority, known as the Planning Commission. *Id.* at 3–4. Nonetheless, the park is still unconstructed. The City of New York and C.S.X. spent over a decade negotiating a purchase and sale agreement for the easement. *Id.* at 4.

On December 23, 2022, C.S.X. sold the corridor to the City of New York. *Id.* (citing Def.'s Ex. G, ECF No. 28-7). Pursuant to this contract, C.S.X. was required to file a verified notice of exemption so that the City of New York could develop the corridor as a park. *Id.* On April 11, 2023, C.S.X. did so, prompting the City of New York to petition the United States Surface Transportation Board for interim trail use. *Id.* at 4–5. On May 26, 2023, the United States Surface Transportation Board approved the petition and issued a Notice of Interim Trail Use. *Id.* (citing Pl.'s Ex. F, ECF No. 27-7).

On August 28, 2023, the Partnership filed a Fifth Amendment claim in this Court, seeking compensation for a federal taking of its alleged property in the Bronx created by Notice of Interim Trail Use. *See generally* Compl. On December 13, 2024, the Partnership filed its Motion for Partial Summary Judgment. *See generally* Pl.'s Mot. On January 24, 2025, defendant filed its Oppostion to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment. *See generally* Def.'s Mot. On February 7, 2025, the Partnership filed its Reply in Support of Its Motion and Response in Opposition to Defendant's Cross-Motion. *See generally* Plaintiff's Reply in Support of Its Motion and Response in Opposition to Defendant's Cross-Motion, ECF No. 29 [hereinafter Pl.'s Reply]. On February 21, 2025, defendant filed its Reply in Support of its Cross-Motion. *See generally* Defendant's Reply in Support of its Cross-Motion, ECF No. 30. On May 5, 2025, the Court heard oral argument on the pending motions.

## II

Rule 56(a) of the Rules of the United States Court of Federal Claims requires the Court to enter judgment if there is "no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." "A genuine issue is one that 'may reasonably be resolved in favor of either party.'" *Schulenburg*, 137 Fed. Cl. at 86 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). The party moving for summary judgment bears the burden of establishing the absence of any genuine issue of material fact. *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed. Cir. 1987). Once the moving party meets its burden, the non-movant must present sufficient evidence—*not* "just denials, conclusory statements, or evidence that is merely colorable"—to rebut the moving party's evidence. *Schulenburg*, 137 Fed. Cl. at 86. In the event of any ensuing evidentiary conflict, factual doubt will be resolved in favor of the non-moving party. *Mingus Constructors, Inc.*, 812 F.2d at 1390. This standard still applies where, like here, both parties move for summary judgment. *Schulenburg*, 137 Fed. Cl. at 86; *e.g.*, *Mingus Constructors, Inc.*, 812 F.2d at 1391 ("[T]he court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.").

## III

This dispute's crux is a 153-year-old deed. On May 18, 1872, Mr. Bogardus conveyed "in fee simple" land located in the Bronx, New York, to the New York and Boston Railroad Company only a month after a superior court order conveyed the property as an easement to same party on April 1, 1872. *See* Def.'s Ex. A at 2, ECF No. 28-1. The deed also bestows the New York and Boston Railroad Company "good right, full power, and lawful authority to grant, bargain, sell and covey" the property at issue. *Id.* at 4.

No party disputes this deed is lawful. Rather, the Partnership tries to make real its unsubstantiated theory that Mr. Bogardus was only conveying the easement and not the property itself. *E.g.*, Pl.'s Reply at 17. Its evidence? Mr. Bogardus "obviously" was conveying only the rights to an easement because the deed was executed only a month later. *Id.* at 13.

The Partnership's mere conjecture is deeply unpersuasive because, under New York state law, the deed unambiguously conveyed the property at issue to the New York and Boston Railroad company. *Schulenburg*, 137 Fed. Cl. at 86 (describing that "conclusory statements" are insufficient at summary judgment). New York law controls because the Partnership's alleged property is in the Bronx, New York. *Castillo v. United States*, 952 F.3d 1311, 1315 (Fed. Cir. 2020). Under this legal regime, a property deed's four corners are determinative, unless there is some textual ambiguity in the deed itself. *Camp Bearberry, LLC v. Khanna*, 225 N.Y.S.3d 767, 770 (N.Y. App. Div. 2025).

Nothing in the deed—and the Partnership does not point to any language—could be "susceptible [to] more than one interpretation." *Torpy's Pond & Outdoor Club, Inc.*

*v. DuSell*, 157 N.Y.S.3d 157, 160 (N.Y. App. Div. 2021). Mr. Bogardus's deed (as so many property contracts do every day) simply conveys property "in fee simple," leaving Mr. Bogardus no ownership interests or powers left in the property. *See* Def.'s Ex. A at 2, ECF No. 28-1. It hints at no previous engagement or decision by the parties. It just conveys property with full rights of ownership to the New York and Boston Railroad Company. *Id.* at 4.

The clear deed is the end of the matter: the Partnership does not own the property at issue. And without an ownership interest, no compensable taking exists as to the Partnership. *Cienega Gardens*, 331 F.3d at 1328. The Partnership's Fifth Amendment taking claim therefore fails as a matter of law.

**IV**

For the foregoing reasons, defendant's Cross-Motion for Summary Judgment, ECF No. 28, is **GRANTED**. Plaintiff's Motion for Partial Summary Judgment, ECF No. 27, is **DENIED**. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/ *Loren A. Smith*

Loren A. Smith,
Senior Judge