No. 25-1849

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

233RD STREET PARTNERSHIP, L.P.,
*Plaintiffs–Appellants*,

v.

UNITED STATES,
*Defendant–Appellee*.

Appeal from the United States Court of Federal Claims
No. 1:23-cv-01358 (Hon. Loren A. Smith)

# APPELLEES' ANSWERING BRIEF

ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

EZEKIEL A. PETERSON
*Attorney*
Environment & Natural Resources Div.
U.S. Department of Justice
999 18th St., North Terrace, Suite 600
Denver, CO 80202
(202) 598-6399
ezekiel.a.peterson@usdoj.gov

## TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ ii

STATEMENT OF RELATED CASES ........ 1

INTRODUCTION ........ 2

STATEMENT OF JURISDICTION ........ 2

STATEMENT OF THE ISSUE ........ 3

STATEMENT OF THE CASE ........ 3

- A. The Trails Act and rails-to-trails takings claims ........ 3
- B. Factual background ........ 5
  - 1. The rail corridor and the 1872 deed ........ 5
  - 2. The 2011 park designation and NITU ........ 6
  - 3. This case and the proceedings below ........ 7

SUMMARY OF ARGUMENT ........ 7

STANDARD OF REVIEW ........ 8

ARGUMENT ........ 9

Plaintiff's taking claim fails because Plaintiff holds no property interest in the rail corridor. ........ 9

CONCLUSION ........ 21

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

### Cases

*Air Pegasus of D.C., Inc. v. United States*,
424 F.3d 1206 (Fed. Cir. 2005) ........................................ 9

*ATS Ford Drive Investment, LLC v. United States*,
136 F.4th 1066 (Fed. Cir. 2025) ........................................ 8, 9, 10

*Behrens v. United States*,
59 F.4th 1339 (Fed. Cir. 2023) ........................................ 4, 5

*Bradley v. Crane*,
94 N.E. 359 (N.Y. 1911) ........................................ 14

*Caquelin v. United States*,
959 F.3d 1360 (Fed. Cir. 2020) ........................................ 4, 5

*Carter v. Heitzman*,
603 N.Y.S.2d 614 (N.Y. App. Div. 1993) ........................................ 14

*Chicago Coating Co. v. United States*,
892 F.3d 1164 (Fed. Cir. 2018) ........................................ 4

*Corning v. Lehigh Val. R. Co.*,
217 N.Y.S.2d 874 (N.Y. App. Div. 1961) ........................................ 11, 12

*Estee Lauder Inc. v. L'Oreal, S.A.*,
129 F.3d 588 (Fed. Cir. 1997) ........................................ 11

*Holland v. McClusky*,
105 N.Y.S.3d 737 (N.Y. App. Div. 2019) ........................................ 12

*In re Parkway in the City of New York*,
103 N.E. 508 (N.Y. 1913) ........................................ 15

*Kilmer v. Wilson*,
49 Barb. 86 (N.Y. 1867) ........................................ 10

*Klock v. Hudson*,
3 Johns. 375 (N.Y. Sup. Ct. 1808) ........................................ 15

*Kohl Indus. Park Co. v. Rockland County*,
710 F.2d 895 (2d Cir. 1983) .......... 10

*Lipton v. Bruce*,
136 N.E.2d 900 (N.Y. 1956) .......... 16

*Loch Sheldrake Assocs. v. Evans*,
118 N.E.2d 444 (N.Y. 1954) .......... 13

*Long Island Railroad Co. v. Conklin*,
32 Barb. 381 (N.Y. 1860) .......... 10

*Margetin v. Jewett*,
912 N.Y.S.2d 356 (N.Y. App. Div. 2010) .......... 13

*MicroStrategy, Inc. v. Business Objects, S.A.*,
429 F.3d 1344 (Fed. Cir. 2005) .......... 18

*Modrzynski v. Wolfer*,
651 N.Y.S.2d 782 (N.Y. App. Div. 1996) .......... 13, 18

*Nichols v. Haehn*,
187 N.Y.S.2d 773 (N.Y. App. Div. 1959) .......... 12

*People v. Helinski*,
634 N.Y.S.2d 837 (N.Y. App. Div. 1995) .......... 6, 11

*Perry v. Edwards*,
913 N.Y.S.2d 460 (N.Y. App. Div. 2010) .......... 13

*Preseault v. Interstate Commerce Comm'n*,
494 U.S. 1 (1990) .......... 3, 4

*Preseault v. United States*,
100 F.3d 1525 (Fed. Cir. 1996) .......... 9

*Rogers v. United States*,
814 F.3d 1299 (Fed. Cir. 2015) .......... 5

*Romanoff v. Village of Scarsdale*,
856 N.Y.S.2d 168 (N.Y. App. Div. 2008) .......... 10

*Ruttenberg v. Davidge Data Sys. Corp.*,
626 N.Y.S.2d 174 (N.Y. App. Div. 1995) .......... 16

*Silver Beach Realty Corp. v. Geenlan*,
204 N.Y.S. 701 (N.Y. Sup. Ct. 1924) .......... 18, 19, 20

*Stearns Co. v. United States*,
396 F.3d 1354 (Fed. Cir. 2005) .......... 8

*Sunnyview Farm, LLC v. Levy Leverage, LLC*,
202 N.Y.S.3d 797 (N.Y. App. Div. 2024) .......... 13

*Wyatt v. United States*,
271 F.3d 1090 (Fed. Cir. 2001) .......... 9

**Statutes**

16 U.S.C. § 1247(d) .......... 3

28 U.S.C. § 1295(a)(3) .......... 2

28 U.S.C. § 1491 .......... 2

49 U.S.C. § 10903 .......... 3

N.Y. Real Prop. Law § 240(3) .......... 13

**Regulations**

49 C.F.R. § 1152.29(a) .......... 4

49 C.F.R. § 1152.29(d)(2) .......... 4

## STATEMENT OF RELATED CASES

No other appeal in this action has been before this Court or any other appellate court, and counsel is unaware of any pending related cases under Circuit Rule 47.5.

## INTRODUCTION

Plaintiff brings an inverse-condemnation action alleging that the Surface Transportation Board's 2023 notice of interim trail use for a rail corridor in New York City took its property without compensation. But Plaintiff's claim suffers from a fatal deficiency. Plaintiff has no property interest in the rail corridor at issue, because in 1872, Plaintiff's predecessor in interest transferred ownership in the corridor in "fee simple" to a railroad. Plaintiff cannot now claim that it owns any property interest in the rail corridor when the 1872 deed unambiguously transferred fee-simple title.

The Court of Federal Claims correctly determined that Plaintiff owned no interest in the rail corridor at issue and granted summary judgment to the United States. This Court should affirm.

## STATEMENT OF JURISDICTION

The Court of Federal Claims had jurisdiction under 28 U.S.C. § 1491 to hear Plaintiff's Fifth Amendment claim requesting just compensation for the alleged taking of their property interest by the United States. On May 8, 2025, the Court of Federal Claims entered judgment disposing of Plaintiff's claims and Plaintiff timely appealed. This Court has jurisdiction under 28 U.S.C. § 1295(a)(3).

## STATEMENT OF THE ISSUE

Whether the Court of Federal Claims property dismissed Plaintiff's Fifth Amendment taking claim where Plaintiff's predecessor in interest had conveyed fee-simple ownership of the property at issue to the railroad by warranty deed.

## STATEMENT OF THE CASE

### A. The Trails Act and rails-to-trails takings claims

When a rail carrier abandons a rail line, that line is removed from the national transportation system and from federal jurisdiction. 49 U.S.C. § 10903; *Preseault v. Interstate Commerce Comm'n*, 494 U.S. 1, 5 n.3 (1990). In 1983, to combat a long-term trend of shrinking rail trackage, Congress designed an alternative to abandonment: a process to allow conversion of unused railroad rights-of-way into recreational trails. National Trails System Act Amendments, Pub. L. No. 98-11, § 208(2), 97 Stat. 42, 48 (1983) (codified as amended at 16 U.S.C. § 1247(d)); *Preseault*, 494 U.S. at 5–7. That process, known formally as "railbanking" and informally as "rails to trails," preserves the Surface Transportation Board's jurisdiction over the rail corridor and allows the Board to reactivate the right-of-way for railroad use as may be warranted in the future. 16 U.S.C. § 1247(d) ("[S]uch interim use [of rail corridors as trails] shall not be treated, for purposes of any law or rule

of law, as an abandonment of the use of such rights-of-way for railroad purposes.").

To invoke the rails-to-trails process and assume responsibility of operating a recreational trail in a rail corridor, a sponsor—most often a local government—files a request with the Board in a railroad abandonment proceeding. 49 C.F.R. § 1152.29(a), (b). If the railroad owner agrees to negotiate a rails-to-trails agreement, the Board issues a Notice of Interim Trail Use or Abandonment, or NITU, after which the owner can discontinue rail service. *Id.* § 1152.29(d); *Behrens v. United States*, 59 F.4th 1339, 1342 (Fed. Cir. 2023). The NITU does not authorize or establish interim trail use. *See* 49 C.F.R. § 1152.29(d)(2). If the railroad and potential sponsor reach an interim trail-use agreement, the rail line "remains under Board jurisdiction indefinitely while used as a recreational trail" operated by the sponsor. *Caquelin v. United States*, 959 F.3d 1360, 1364 (Fed. Cir. 2020).

Depending on the nature of the property interests held by the owner of the rail corridor and other factors, the rails-to-trails process can sometimes result in a compensable taking of private property. *See Preseault*, 494 U.S. at 16. If the Board issues a NITU that facilitates recreational trail use on a parcel of land that a railroad owns in fee simple, that NITU does not cause a compensable taking because it does not infringe any third party's property interests. *Id.*; *Chicago Coating Co. v. United States*, 892 F.3d 1164, 1170 (Fed. Cir. 2018). And where a

railroad does hold an easement, state law or other factors (rather than the federal action) may nonetheless limit or preclude reversionary rights from vesting. *See, e.g.*, *Caquelin*, 959 F.3d at 1371 (taking occurs only when state law reversionary interests *that would otherwise vest* are blocked).

Thus, many rails-to-trails takings cases hinge on the validity of a claimant's assertion that a railroad holds only an easement—rather than fee-simple title—over a rail corridor that a claimant purports to own. Resolving that issue in each case "depend[s] on state law and the facts of the particular land grants" that conveyed the right-of-way to the railroad. *Behrens*, 59 F.4th at 1343; *see Rogers v. United States*, 814 F.3d 1299, 1305 (Fed. Cir. 2015) ("state law" governs "the property rights of the parties in a rails-to-trails case").

### B. Factual background

#### 1. The rail corridor and the 1872 deed

Plaintiff owns property located at 170 West 233rd Street in New York City, which is bordered on one side by a rail corridor that is owned, and last operated, by CSX Transportation, Inc. Appx384, 393. The 0.77-mile rail corridor has been inactive since 1990. Appx197.

In the early 1870s, Plaintiff's property and the adjacent rail corridor were owned by John Bogardus. Appx365. CSX's predecessor in interest—the New York and Boston Railroad Company—initially

acquired a property interest in the rail corridor through condemnation proceedings on April 1, 1872. Appx365. Under New York law, the interest acquired by the Railroad through the condemnation proceeding was a permanent easement, not title in fee. *See People v. Helinski*, 634 N.Y.S.2d 837, 840 (N.Y. App. Div. 1995). But the Railroad did not rest on the title obtained through the condemnation proceeding. On May 18, 1872, Mr. Bogardus executed a warranty deed conveying the entirety of his fee-simple ownership in the corridor to the New York and Boston Railway Company. Appx413–15.

**2. The 2011 park designation and NITU**

In the years since the rail corridor became inactive in 1990, the City and State of New York began developing a network of hiking and biking paths in the region. As part of that process, the City planned the Tibbets Brook Daylighting Project, which includes the construction of a trail in the rail corridor. Appx418. As part of the planning for this project, the City Planning commission, acting on a petition by the City Department of Parks and Recreation, rezoned the corridor as a public park in January 2011. Appx419–25. This public park entirely overlays the rail corridor, including the portion of the corridor at issue in this case. Appx434.

The City spent years negotiating a purchase of the corridor from CSX and entered into a purchase agreement with CSX in December 2022. Appx441–57. As part of that agreement, CSX agreed to begin the

rails-to-trails process such that the City could become a trail sponsor for the corridor and expand its trail network in the region. Appx442. In 2023, CSX initiated the rails-to-trails process and, one month later, the STB issued a NITU. Appx346–48.

### 3. This case and the proceedings below

In August 2023, Plaintiff filed a complaint against the United States, alleging that it owned the portion of the rail corridor adjacent to its property and arguing that the STB's decision to issue a NITU effected a compensable taking under the Fifth Amendment. Appx012–014. After discovery, both parties filed cross motions for summary judgment.

The Court of Federal Claims denied Plaintiff's motion for summary judgment and granted summary judgment for the United States. Appx2. Specifically, the court found that Plaintiff "does not own the property at issue" because Mr. Bogardus's 1872 deed conveyed the rail corridor to CSX's predecessor "in fee simple." Appx 5. Because Plaintiff lacked any property interest in the rail corridor, the court held that Plaintiff's takings claim "fails as a matter of law." Appx2.

## SUMMARY OF ARGUMENT

This Court should affirm the judgment of the Court of Federal Claims because Plaintiff does not have a property right in the rail corridor at issue. In 1872, the Plaintiff's predecessor in interest

executed a deed that unambiguously transferred "fee simple" title in the rail corridor to a railroad.

Plaintiff makes a variety of arguments as to why the Court should disregard the plain language of the 1872 deed, but none are persuasive. New York law instructs that, when language in a deed is unambiguous, courts may not look at extrinsic evidence in interpreting the deed. And here, the deed unambiguously transferred fee-simple title to the rail corridor. In attempting to avoid this conclusion, Plaintiff speculates why the parties to the deed might not have understood the deed do what its plain language says it does, but speculative arguments about the parties' subjective intents are immaterial when the plain language of the deed is unambiguous. Thus, the Court of Federal Claims correctly held that Plaintiff's takings claim fails as a matter of law because it holds no property interest in the rail corridor. This Court should affirm.

## STANDARD OF REVIEW

This Court reviews de novo the Court of Federal Claims' decision to grant summary judgment. *ATS Ford Drive Investment, LLC v. United States*, 136 F.4th 1066, 1069 (Fed. Cir. 2025). The Court reviews the Court of Federal Claims' legal conclusions de novo and reviews factual conclusions for clear error. *Stearns Co. v. United States*, 396 F.3d 1354, 1357 (Fed. Cir. 2005).

## ARGUMENT

### Plaintiff's taking claim fails because Plaintiff holds no property interest in the rail corridor.

This Court should affirm the judgment of the Court of Federal Claims because the record shows that Plaintiff holds no property interest in the rail corridor at issue here. This case turns on whether the 1872 deed conveyed a fee-simple interest in the rail corridor to the railroad. If it did, then Plaintiff has no right or interest in the corridor and thus has no claim related to that corridor for a taking. *ATS Ford Drive Investment*, 136 F.4th at 1070 (citing *Preseault v. United States*, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (en banc)). This is because "only persons with a valid property interest at the time of [a] taking are entitled to compensation." *Air Pegasus of D.C., Inc. v. United States*, 424 F.3d 1206, 1212 (Fed. Cir. 2005) (quoting *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed. Cir. 2001)).

The Court of Federal Claims correctly held that Plaintiff's taking claim fails as a matter of law because the 1872 deed conveyed a fee-simple interest in the rail corridor to the railroad and thus Plaintiff has no property interest in the corridor. The plain text of the deed compels this conclusion. The deed states that it transfers "all the estate, right, title, interest" held "in fee simple" to the parcel of land and affirms that the grantor "hath good right, full power, and lawful authority to grant, bargain, sell and convey the same." Appx413–15. Nowhere does the

deed state that it was intended to convey a property interest less than fee simple. *See, e.g.*, *Kohl Indus. Park Co. v. Rockland County*, 710 F.2d 895, 903 (2d Cir. 1983) ("When no limiting language is included in the conveyance document, 'title' is understood to mean a fee interest, not an easement." (interpreting New York law)); *Romanoff v. Village of Scarsdale*, 856 N.Y.S.2d 168, 171 (N.Y. App. Div. 2008) (instrument dedicating "all its right, title, and interest" in land with no limiting language conveys fee title, not an easement). And the deed includes a warranty, which under New York law is a further indicia that fee title was granted. *See, e.g.*, *Kilmer v. Wilson*, 49 Barb. 86, 88 (N.Y. 1867) (warranty provision confirms that deed granted fee title because "*it would be absurd to make such a covenant in respect to lands, the title to which remained in the grantor*." (quoting *The Long Island Railroad Co. v. Conklin*, 32 Barb. 381, 388 (N.Y. 1860)) (emphasis in original)).

Plaintiff neither points to language in the deed itself that shows intent to transfer a lesser estate, nor disputes that the deed, by its plain language, transfers fee-simple title. *See* Appx412–16. Because the deed reflects a transfer of all legal rights held by Mr. Bogardus in the corridor, the railroad (the predecessor to CSX) acquired the corridor in fee simple. *See* Appx413–15. Thus, CSX owned the corridor in fee simple when the STB issued the NITU, so Plaintiff lacks any compensable property interest in the corridor and cannot state a claim for a taking. *ATS Ford Drive Investment*, 136 F.4th at 1070.

This is as far as this Court needs to go to resolve this case. Plaintiff makes a variety of arguments as to why the Court should hold that the deed—contrary to its plain language—did not convey fee-simple title to the railroad. But these arguments rely on speculation, not evidence in the record, and they are not sufficient to overcome the deed's explicit language. *See Estee Lauder Inc. v. L'Oreal, S.A.*, 129 F.3d 588, 595 (Fed. Cir. 1997) ("[A]rguments of counsel cannot take the place of evidence lacking in the record." (internal citation omitted)).

First, Plaintiff argues that, under New York law, when land is taken for public use the fee title to the land remains with the original owner. Pls' Br. 11–16. The United States does not dispute that land taken through condemnation proceedings generally results in an easement under New York law. *See, e.g.*, *Helinski*, 634 N.Y.S.2d at 840. But that is irrelevant here. Here, there is a deed, postdating the condemnation proceedings, that explicitly transfers fee-simple ownership of the corridor to the railroad. Appx412–16.

Nothing in New York law prevents a railroad from obtaining fee title, rather than an easement, by deed. Indeed, New York courts have repeatedly rejected the argument (made by Plaintiffs here) that voluntary conveyances to railroads "can convey only to the railroad only a railroad easement, regardless of the terms of the grant." *Corning v. Lehigh Val. R. Co.*, 217 N.Y.S.2d 874, 878–79 (N.Y. App. Div. 1961) (collecting cases). To the contrary, "the interest of the railroad company

depend[s] upon what the grant says," thus, "[i]f the grant is a grant in fee simple, without any condition or limitation, the railroad company takes a fee simple absolute." *Id.* at 879. That is exactly the case here, and the conclusion that the railroad held a fee simple interest fully aligns with New York law. Moreover, if the railroad and Mr. Bogardus wanted to transfer a more limited interest, the deed could have specified as much. *See Holland v. McClusky*, 105 N.Y.S.3d 737, 738 (N.Y. App. Div. 2019) (deed conveying "right of way for railroad purposes" granted only an easement); *Nichols v. Haehn*, 187 N.Y.S.2d 773, 778 (N.Y. App. Div. 1959) (deed to railway granted fee on special limitation). But it did not.

Next, Plaintiff argues that the deed was not a transfer of fee-simple ownership but rather represented the "completion of the railroad's acquisition through condemnation and the landowner's acquiescence to that condemnation." Pl's Br. 16. Again, Plaintiff does not rely on the text of the deed in making this argument but speculates based on extrinsic evidence. For instance, Plaintiff argues that because the condemnation decree and the deed both include the same language describing the property, appear to recite the same consideration, and were issued a month apart, they must be read to refer to the same transaction. Pls' Br. 17–18. But, under New York law, it is improper to look outside the four corners of the deed when the language of the deed is unambiguous.

Under New York law, a deed is construed according to the intent of the parties, "so far as such intent can be gathered from the whole instrument." N.Y. Real Prop. Law § 240(3). "The 'intent' to which the statute refers is the objective intent of the parties *as manifested by the language of the deed*; unless the deed is ambiguous, evidence of unexpressed, subjective intentions of the parties is irrelevant." *Margetin v. Jewett*, 912 N.Y.S.2d 356, 358 (N.Y. App. Div. 2010) (emphasis added). A plethora of New York cases confirm that, under state law, courts do not look outside the language of the deed unless the deed is "susceptible of more than one interpretation." *Modrzynski v. Wolfer*, 651 N.Y.S.2d 782, 783 (N.Y. App. Div. 1996) (quoting *Loch Sheldrake Assocs. v. Evans*, 118 N.E.2d 444, 447 (N.Y. 1954)); *see also, e.g.*, *Perry v. Edwards*, 913 N.Y.S.2d 460, 461 (N.Y. App. Div. 2010); *Sunnyview Farm, LLC v. Levy Leverage, LLC*, 202 N.Y.S.3d 797, 801–02 (N.Y. App. Div. 2024).

Here, the language of the deed itself is clear: it transfers "all the estate, right, title and interest" in the rail corridor that the grantor owns "in fee simple" and it affirms that the grantor "hath good right, full power, and lawful authority" to do so. Appx414–15. That language is not subject to more than one interpretation. Thus, in interpreting the deed, this Court should not look outside of the deed's plain language. *Modrzynski*, 651 N.Y.S.2d at 783. Nevertheless, that is exactly what Plaintiff asks this Court to do, making a smorgasbord of arguments

about the parties' subjective intent in executing the deed. *See, e.g.*, Pl's Br. 22 (arguing that the condemnation proceedings and the deed were "for the same purpose"), Pl's Br. 26 (drawing conclusions about why Mr. Bogardus chose to execute the deed); Pl's Br. 28 ("[T]he deed appears to be more in line of an intent by Mr. Bogardus to complete the taking."). Simply put, these speculative arguments about the parties' subjective intents in executing the deed are irrelevant. Under New York law, the plain language of the deed—which transfers fee-simple title in the rail corridor to the railroad—controls.

The fact that statutes relating to condemnation are generally construed in favor of landowners under New York law does not change the outcome here. *Cf.* Pl's Br. 37–41. Certainly, New York courts have explained that, in cases where private property is taken for public use, instruments governing such takings are generally construed in favor of landowners. *See Bradley v. Crane*, 94 N.E. 359, 363 (N.Y. 1911). But that rule (1) only applies when there is an ambiguity and (2) only applies to instruments governing takings, not other deeds. It thus does not apply to the construction of the deed here. As explained above, there is no ambiguity in the deed transferring fee-simple interest in the rail corridor to the railroad. And, even if there were an ambiguity in the deed, black-letter New York law explains that—when it comes to a deed—the ambiguity would be construed *against* the Mr. Bogardus and in favor of the railroad. *See Carter v. Heitzman*, 603 N.Y.S.2d 614, 615

(N.Y. App. Div. 1993) ("To the extent that there is ambiguity in the language employed, the deed should be construed most strongly against the grantor and in favor of the grantee."); *see also In re Parkway in the City of New York*, 103 N.E. 508, 509 (N.Y. 1913) (language of conveyance "is to be interpreted most favorably in favor of the grantee"); *Jackson ex dem. Klock v. Hudson*, 3 Johns. 375, 387 (N.Y. Sup. Ct. 1808) ("Where a deed may enure in different ways, the grantee shall have his election which way to take it. An exception in a deed is always to be taken most favorably for the grantee . . . ."). Thus, Plaintiff's statement that "the extent to which New York favors landowners in these circumstances cannot be overstated" (Pl's Br. 37) is simply wrong; where a deed is at issue, the rule is reversed.

Plaintiff's argument that easements taken for railroad use are limited in scope to railroad use misses the mark for the same reason. Pl's Br. 38–40. Although that may be true when it comes to easements, here the property transfer is governed by a warranty deed that transfers a fee-simple interest in the rail corridor. The same goes for Plaintiff's argument that when public use for a taking ends the land returns to the citizen owner of reversionary property rights. Pl's Br. 41. Mr. Bogardus (and thus Plaintiff) lost any reversionary property rights when he executed a warranty deed transferring his entire interest in the rail corridor.

There is a second reason that this Court should not accept Plaintiff's argument that the deed merely represented the completion of the railroad's acquisition through condemnation: doing so would render the deed as surplusage. Under Plaintiff's interpretation, the deed did nothing that the condemnation had not already done. Pl's Br. 27 ("It is unlikely that the New York and Boston Railroad and Mr. Bogardus would see much of a distinction between the interest taken in the condemnation proceedings and the deed."). But, as Plaintiff itself recognizes, the language of a deed must be interpreted and applied "as to be meaningful and valid." *Id.* (quoting *Lipton v. Bruce*, 136 N.E.2d 900, 904 (N.Y. 1956)). The Court should not interpret the deed as doing the exact same thing that the condemnation proceedings already accomplished, rendering the deed surplusage. *See Ruttenberg v. Davidge Data Sys. Corp.*, 626 N.Y.S.2d 174, 177 (N.Y. App. Div. 1995) ("An interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms . . . .").

Plaintiff argues that the deed is not surplusage under its interpretation because the deed represents a separate step in the condemnation process that "completed" the taking. Pl's Br. 28. Plaintiff's only evidence supporting this interpretation of the deed is that, according to Plaintiff, "nothing said in the condemnation proceedings . . . could be interpreted as completing the transfer to Mr. Bogardus' land to the railroad." Pl's Br. 28. But the order is clear that it

assesses the value of an easement on Mr. Bogardus's land and directs the railroad to compensate Mr. Bogardus for that taking. The order explains that its purpose is to "ascertain and determine the compensation which ought justly to be made by the said The New York and Boston Railroad Company to the owners or persons interested in such parcel of real estate," Appx361, and, after assessing the value of the taking (Appx365), orders the railroad to compensate the landowners for the taking. Appx377 ("[I]t is further ordered that the other amounts of the various awards for compensation hereinbefore mentioned . . . be paid within said thirty days directly to the several parties indicated herein as owners . . . ."). After that order, there would be no purpose in executing the deed if the parties believed that it did no more than confirm the prior compensation for the railroad easement. And the deed's plain text contravenes this interpretation, expressly stating that it transfers ownership in the rail corridor in fee simple. Appx415.[1]

In support of this argument, Plaintiff points to an Interstate Commerce Commission valuation ledger from 1917, which documents these two transactions, but lists only one sum of $750 that was paid to Mr. Bogardus. Pl's Br. 18–21 (citing Appx355). It is true that the ledger

[1] Plaintiff argues that the deed merely represented the completion of the condemnation proceedings because the two documents describe the property in precisely the same way. Pl's Br. 17–18. This is unexceptional. The documents involved the same parties and the same piece of land, it makes sense that they would describe that land the same way.

only lists one transaction of $750, rather than two. But this extrinsic evidence, which was prepared nearly 50 years after the transaction occurred, cannot overcome the plain text of the two documents, the first of which grants an easement to the railroad and the second of which transfers all of Mr. Bogardus's ownership in fee simple. That language is not susceptible to more than one interpretation, so the Court should not look at extrinsic evidence outside of the plain text of the documents. *Modrzynski*, 651 N.Y.S.2d at 783. And, in any event, the Interstate Commerce Commission valuation ledger lists the condemnation order and the deed as two separate entries, further underscoring that the two documents were not merely meant to do the same thing.[2]

Plaintiff attempts to make hay from a single 1924 New York trial-court decision which it claims is "controlling precedent" that is "directly on point." Pl's Br. 22, 33 (citing *Silver Beach Realty Corp. v. Geenlan*, 204 N.Y.S. 701 (N.Y. Sup. Ct. 1924), *aff'd* 210 A.D. 829 (N.Y. App. Div. 1924)). Of course, *Silver Beach* is not controlling; a state-court decision on a matter of state law is not binding on this Court unless it is rendered by the state's highest court. *MicroStrategy, Inc. v. Business Objects, S.A.*, 429 F.3d 1344, 1359 (Fed. Cir. 2005). And, in any case, *Silver Beach* is inapposite here.

---

[2] The ledger also lists the instrument transferring title to the rail corridor as a "deed" rather than an "easement," which suggests that the conveyance was meant to do more than simply confirm the prior condemnation proceedings. Appx355.

In that case, a town took an individual's land for a highway in 1800. *Silver Beach*, 204 N.Y.S. at 702. The next year, the town commissioners and the individual signed an instrument that confirmed that the individual had agreed to build a dock for the town where the road ended and stated: "The undersigned commissioners . . . do accept said road and dock as they now are as a complete fulfillment of the agreement . . . and the [individual] does hereby convey to the town of Westchester the ground so taken and occupied *as aforesaid*." *Id.* at 703 (emphasis added). The court rejected the plaintiff's argument that the later instrument conveyed title in fee simple, holding that the instrument merely indicated that the individual had acquiesced in the dedication of his land for public use, but did so "with no intention of parting with the fee simple, which was not necessary for such purpose." *Id.* at 703–04.

Plaintiff overlooks the major difference between this case and *Silver Beach*: in *Silver Beach* the later-in-time instrument explicitly referred to the earlier transaction and plain language of the instrument did not purport to transfer the property in fee simple. *Id.* at 703. In this case, on the other hand, there is no language in the deed mentioning the prior condemnation proceedings, and the plain language of the deed does something entirely different than the condemnation proceedings—it transfers ownership of the rail corridor in fee simple. Appx415. So *Silver Beach* is not directly on point. It is unremarkable that the court

in *Silver Beach* read the later-in-time instrument together with the condemnation proceedings when the instrument explicitly referred to the "aforesaid" agreement. *Silver Beach*, 204 N.Y.S. at 703. There is no such language in the deed here, so *Silver Beach* does not compel Plaintiff's interpretation contrary to the deed's plain text. The deed does not reference the condemnation proceedings, does not rely on the proceedings, and does not purport to convey the same interest. *See* Appx413–16.

In sum, the plain language of the deed unambiguously transfers fee-simple title of the rail corridor to the railroad. Under New York law, that unambiguous language is determinative of the parties' intent, and the Court does not look to extrinsic evidence in interpreting the deed. Thus, Plaintiff does not have a property interest in the rail corridor and cannot state a claim for a taking. Plaintiff's arguments to the contrary rely entirely on speculation about the parties' subjective intent in executing the deed, but it cannot overcome the unambiguous language, which transfers fee-simple ownership of the rail corridor.

## CONCLUSION

For these reasons, this Court should affirm the judgment of the Court of Federal Claims.

Respectfully submitted,

/s/ *Ezekiel A. Peterson*
ADAM R.F. GUSTAFSON
*Acting Assistant Attorney General*

EZEKIEL A. PETERSON
*Attorney*
Environment & Natural Resources Div.
U.S. Department of Justice
999 18th St., North Terrace, Suite 600
Denver, CO 80202
(202) 598-6399
ezekiel.a.peterson@usdoj.gov

September 15, 2025
90-1-23-5-17247

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing with the United States Court of Appeals for the Federal Circuit through the CM/ECF system on September 15, 2025. All case participants are registered CM/ECF users, and the Notice of Docketing Activity generated by this filing constitutes service under Fed. Cir. R. 25(e)(1).

/s/ Ezekiel Peterson
EZEKIEL A. PETERSON

Counsel for the United States

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation set forth in Fed. Cir. R. 32(b). Excluding the items exempted by Fed. R. App. P. 32(f) and Fed. Cir. R. 32(b), this brief contains 4,595 words.

I certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6). This brief has been prepared using Microsoft Word 2021 in 14-point Century Schoolbook, a proportionally spaced font.

/s/ Ezekiel Peterson
EZEKIEL A. PETERSON

Counsel for the United States